W. W. WILLIAMS, Trustee, v. A. B. WALKER et al.

*Married Women—Free Trader—Fraud—Mortgage—Privy Examination.*

1, When the only evidence offered in a trial upon the issue as to whether a married woman was a free trader was a mortgage reciting that she was such, and the testimony of witnesses that they thought they had seen " the free-trade papers " in office of the Register of Deeds: It was *Held*, that the Court properly instructed the jury to find she was not a free trader.

2. The mortgages executed by her without privy examination are void as to her, though duly proved by the oath of a subscribing witness and recorded.

3. There is no equity to subject her interest in the lands so attempted to be conveyed in such mortgages to a lien in favor of the mortgagee, because he was induced by her false and fraudulent representation that she was a free trader to loan her the money secured by such mortgages; he can, however, follow and recover the money itself so obtained, in her hands, or the property into which such money has been converted, and he can subject to his lien any interest the husband had in the said lands.

CLARK, and MACRAE, JJ., dissenting.

This was a CIVIL ACTION tried at the January Term, 1892, of CUMBERLAND Superior Court, before *Boykin, J.*

The facts are stated in the opinion.

*Messrs. H. McD. Robinson* and *T. H. Sutton*, for plaintiff.
*Messrs. J. B. Batchelor* and *John Devereux, Jr.*, for defendant.

BURWELL, J. : This cause was before this Court at September Term, 1890, upon an appeal by Mrs. Elizabeth Walker, which appeal was dismissed because the order appealed from was interlocutory. 107 N. C., 334. Since that dismissal of her appeal Mrs. Elizabeth Walker has died, and the administrator of her estate and her heir at law have been made parties defendant in her stead.

The reference which was directed by the interlocutory order from which Mrs. Walker appealed, as above stated, was had, exceptions to the referee's report were filed and considered, and a final judgment was rendered at January Term, 1892, of the Superior Court of Cumberland County, from which judgment both the plaintiff and defendant appealed to this Court.

The records filed in these appeals were voluminous, and many exceptions were taken by the parties during the long progress of the cause, but the decision of two questions which are presented in each of the " cases " seems sufficient to dispose of the matter now before us.

1. The plaintiffs contended that Elizabeth Walker, who was the wife of A. B. Walker, was " a free trader " at the time she executed the mortgages, the foreclosure of which is the relief demanded in the complaint. They admit that no such certificate as is provided for in section 1827 of *The Code* was ever registered in the office of the Register of Deeds for Cumberland County, where she resided. But they insist that she was a " free trader " at that time because the mortgages set out in the complaint recited that she was a free trader, and

these mortgages were signed by her and her husband, and were duly proved by the subscribing witnesses and registered. And on the trial they introduced other mortgages, executed, probated and registered in like manner, and containing the same recital, to-wit, that she was a " free trader."

. They further contend, as we understand the record, that inasmuch as they had produced two witnesses (McIlvary and Campbell) who testified, the defendant objecting, that they were very firmly impressed with the belief that Mrs. Walker was a free trader, and they thought they had seen her " free trade papers " in the Register's office (at what date they could not tell), but had searched the Register's books and could find no such paper registered, the jury should have been allowed to pass upon the issue whether or not she was a free trader.

*The Code,* § 1827, provides that " a married woman, in order to become a free trader, shall sign, with her husband, a writing in the following, or some equivalent form : ' A. B., of the age of twenty-one years or upwards, wife of C. D., of ____ County, with his consent, testified by his signature hereto, enters herself as a free trader from the date of the registration hereof. Signed, A. B.; C. D.; Witness, E. F. Registered this ____ day of ____ 18__.' The said writing may be proved by the subscribing witness or acknowledged by the parties before any officer authorized to take the probate of deeds, and shall be filed and registered in the office of the Register of Deeds for the county in which the woman proposes to have her principal or only place of business." And section 1828 is as follows: " From the time of the *registration* of the writing mentioned in the preceding section, the married woman therein mentioned shall be a free trader, and authorized to contract and deal as if she were a *feme sole.*"

It seems plain that the execution of deeds by a married woman and her husband, in which is recited the statement that she is a free trader, cannot have the effect to make her such. That would not be a compliance with the terms of

the statute. The protection which coverture affords to a married woman, so carefully provided by the laws of the State, as interpreted by this Court, should not be taken away from her, nor should she be allowed to lay it aside except upon strict compliance with the statutes enacted for her safety. If the deed or mortgage of a married woman which recites that she is a " free trader," when in fact she is not, is to be effectual to convey her real estate, provided her husband joins in the execution of the instrument and it is registered, though there is no privy examination of the wife, upon the theory that the registration of such a paper is a sufficient compliance with law, both to make her a free trader and to convey her land, there would be broken down all the protection now afforded to *femes covert* by the requirement that their deeds shall divest them of their real estate only when they have executed such deeds in the manner prescribed, and under privy examination by one of the officers designated for that purpose.

No "free trade papers" of Mrs. Walker were ever registered. So the witnesses said. They testified that they *thought* they had seen such papers—had a firm impression that they had seen them. Such uncertain statements should not have been received as evidence that such papers ever existed.

We therefore conclude that Mrs. Elizabeth Walker was not a free trader at the time of the execution of the mortgage set out in the complaint, or at any other time, so far as the record in this cause shows. There was, therefore, no error in his Honor's instruction to the jury that they should say, by their answer to the second issue, that Mrs. Walker was not a free trader at the time the mortgages were executed.

2. The question next to be considered is one of much more importance.

The jury found, in response to the fifth and sixth issues, that the plaintiff John D. Williams was induced to become endorser for the defendants by reason of the false and fraud-

ulent representation of Mrs. Elizabeth Walker, and that, both to said Williams and to the public generally, she represented herself to be a free trader at the time of the execution of the mortgages which the plaintiffs are endeavoring to enforce. Upon these facts the plaintiffs contend that the plaintiff John D. Williams was entitled to have a lien declared in his favor on the land of Elizabeth Walker, described in the mortgages, to the extent of the sums he had been compelled to pay out as her endorser on the notes set out in those mortgages.

A *feme covert* not a free trader can be divested of her title to her real estate, under the laws of this State, only by the deed of her husband and herself executed in proper form, she being privily examined separate and apart from her husband, according to the terms of the statute. Repeated decisions of this Court are to that effect. It is sufficient to cite the recent case of *Farthing* v. *Shields*, 106 N. C., 389. In that case it was said: "Whatever may be the rulings in other States (and they are admitted to be in hopeless conflict), we prefer to adhere to the principle, so often declared by this Court, that a married woman, as to her statutory separate property, is to be deemed *feme sole* only to the extent of the power conferred by the Constitution and laws creating the same. Holding, as we do, that her power to charge such separate estate by an engagement in the nature of a contract is measured and limited by her power to dispose of the same, it must follow that if the wife, with the written consent of her husband, had expressly charged her statutory separate real estate, it would have been of no avail without privy examination."

In order to overcome, if possible, this obstacle in the way of their recovery against the land of Mrs. Walker, the plaintiffs strenuously insist that, by reason of the fraudulent and false representations made by her as found by the jury,

she was estopped to deny the plaintiffs' right to a lien on the land for the purposes set out in the mortgages.

In *Scott* v. *Battle*, 85 N. C., 184, RUFFIN, J., says: "There can grow no fraud out of the contract of a married woman. It stands upon its own strength, both in law and equity. If perfect, then well and good; if imperfect, it is an absolute nullity, no matter upon what consideration, and as is said in *Towles* v. *Fisher*, 77 N. C. 438, no one can reasonably rely upon the contract of a married woman, or on representation as to her intention, which, at best, is in the nature of a contract, and by which he must be presumed to know that she is not legally bound, and it is only in the case of a pure *tort*, altogether disconnected with a contract, that any estoppel against her can operate."

It is to be noted that the plaintiffs are not endeavoring by this action to compel the *feme* defendant, a married woman, to surrender property that she has acquired by fraud, nor to follow a fund which she has obtained by fraudulent representations, and to subject property in which she has invested the fund so acquired to the payment of the debt which she contracted when she obtained it; but their contention is that her false and fraudulent representation as to her *capacity* to make the contract estops her from asserting her *incapacity* to contract in that form. The law, for good reason, has fixed limits to her capacity to contract, especially as to her statutory separate real estate, and no representations on her part, however false and fraudulent, can have the effect of enabling her to evade these limitations. To hold otherwise would be to introduce into our law an entirely new system of the conveyances of the real estate of *femes covert*. *Drury* v. *Foster*, 2 Wallace, 24; Bishop Law Married Women, § 489. It is true, as is said in *Hart* v. *Hart*, 109 N. C., 368, that "the law abhors fraud and will not help any person to take advantage of and have benefit of it," and this principle was in that case applied to a *feme covert*. But neither that case, nor any of

111—39

the cases cited (*Burns* v. *McGregor*, 90 N. C., 222; *Walker* v. *Brooks*, 99 N. C., 207; *Loftin* v. *Crossland*, 94 N. C., 76; *Boyd* v. *Turpin*, *Ibid*, 137) sustain the position that the false and fraudulent representations of a married woman as to·her capacity to contract estops her from asserting her legal incapacity so to do. "If a married woman executes a conveyance of land in her maiden name, and dates it back to a time before the marriage, this transaction, however fraudulently intended, does not pass the land by estoppel." Bishop's Law Married Women, § 489. "If a legal incapacity can be removed by a fraudulent representation of capacity, then the legal incapacity will have only a moral bond or force, which is absurd. *Keen* v. *Coleman*, 3 Wright (Pa.), 299, cited by Mr. Bishop in section 489. "So if a *feme covert*, reciting by her deed that she is a *feme sole*, grant an annuity, this is a void grant, and she shall not be concluded by this recital" *Brinegar* v. *Chaffin*, 3 Dev., 108.

"The true rule seems to be this: The contract of a person under disability cannot be made good by estoppel. Thus, if a married woman entered into an agreement (which, being made by a married woman, is void) for the sale of real estate, the circumstance that the purchaser went into possession under the contract and made valuable improvements with the consent and encouragement of the *feme*, would not operate to estop the latter, because, as no remedy could possibly be had upon the void contract, it would be against the policy of the law to allow the same result to be reached through the indirect medium of an estoppel. Nor would the case of the purchaser be made any better if the woman had represented herself to be *sole*. Such a representation could amount to no more than a covenant that she was *sole*, and her coverture would render such a covenant, as well as all others, void." Bispham's Principles of Equity (4th ed.), section 293.

"A married woman could not do by acts *in pais* what she could not do by deed. She could not by her own act enlarge her legal capacity to convey an estate." Bigelow on Estoppel (3d ed.), p. 510.

These principles, announced by these high authorities, are not in conflict with that other principle so tersely stated by Chief Justice SMITH in *Walker* v. *Brooks*, 99 N. C., 207: "It (coverture) affords no shelter or protection for fraud"; and by Chief Justice MERRIMON in *Burns* v. *McGreggor*, 90 N. C., 222: "The Constitution and the statute wisely extend large and careful protection and safeguards to married women in respect to their rights and property, but it is no part of their purpose to permit, much less help, one of them to perpetrate a fraud, if by possibility, under some sinister influence she should attempt to do so. It would be a reproach upon the law if such a thing could happen." The sterling honesty of these great jurists was outspoken in their emphatic rejection of the proposition that the law they so much loved would allow anyone, *feme covert* or not, to retain property acquired by fraud, or to hold the title to property while repudiating the obligation to pay the purchase-money; and his accurate knowledge of the decisions of this Court, and appreciation of the fact that it was his duty, as it is ours, not to be governed by what to our peculiar senses may seem equitable and right in the particular case before us, but to adhere to the established rules of law, induced the latter in the same case (page 225) to say: "If, however, one under a contract not binding on her, sell property to a married woman, that shall be consumed or disposed of in some way, so that he cannot reach it if she chooses to disaffirm her contract and not pay the purchase-money, the creditor must pay the penalty of his folly in the loss of his debt."

In *Thurber* v. *LaRoque*, 105 N. C., 301, it is said: "The wife cannot subject her separate real estate or any interest therein to any lien, except by deed in which the husband

joins, with privy examination as prescribed by law, and she will not be allowed to do indirectly what the law prohibits her from doing directly."

If the money acquired by Mrs. Walker, by reason of her fraud, is in the hands of her administrator, or if there is in his possession or in the possession of her heirs, any property purchased by her with this money, in whole or in part, the law, in its abhorrence of fraud, will speedily correct the wrong that has been done. *Edwards* v. *Culberson*, at this term. But if that money has been consumed, the plaintiffs are remediless.

We therefore conclude, (1) that there was no evidence that Mrs Elizabeth Walker was a free trader at the time of the execution of the mortgages set out in the complaint; (2) that those mortgages as to her are void and of no effect; (3) that the plaintiff John D. Williams is not entitled to have an equitable lien on the land of Mrs. Elizabeth Walker, described in said mortgages, for the sums paid out by him as her surety or endorser.

From these conclusions it follows that all exceptions of the plaintiffs to his Honor's charge, so far as it related to the second issue, are overruled. There was no error in the charge as to that issue.

The fifth and sixth issues should not have been submitted to the jury, as their findings on these issues can have no effect upon the rights of the parties. The judgment should have declared that the plaintiffs neither had, nor were entitled to have, any lien on the land of Elizabeth Walker, and that as to her administrator and heirs at law the action be dismissed.

As it appears that the plaintiffs contend that some of the tracts of land conveyed in the mortgages were the property of the defendant A. B. Walker, and if so, the plaintiffs have a lien thereon which may be enforced in this action, the

cause is remanded that proceedings may be had against the defendant A. B. Walker, as plaintiffs may be advised.

In plaintiffs' appeal—No error.   In defendants' appeal—Error.

CLARK, J.: I cannot concur with the majority.   The Constitution and the present statutes as to the rights of married women were certainly intended to emancipate them, not to assimilate them farther in the condition of infants in law, and incompetents.   The constitutional provision was an enabling, not a disabling act.   It surely was never intended by the lawmakers that a married woman could make false and fraudulent representations, as the jury find that the *feme covert* did in this case, and having procured money thereby upon a mortgage executed with the concurrence of her husband, should be able to plead her disability against liability for the fraud.   No fiction can be more transparent than that a married woman who has committed such fraud. as is set out in the record, is an incompetent being who is not civilly liable for her conduct when she would be held liable criminally for the same act.   Besides, as the consideration enured to the benefit of her separate estate, she will not be permitted to repudiate the obligation incurred. *Bridgers* v. *Bridgers*, 101 N. C., 71.   The Constitution does not require the privy examination except in one case, in the conveyance of the husband's homestead, and that is a restriction on the husband, not upon the wife.   It is true that by statute a married woman, unless a free trader, cannot yet convey her land except by deed with privy examination, but when, as in this case, she executed a deed, without privy examination, to indemnify one who, without any benefit or consideration to himself, was induced to sign as her surety upon representations which the jury find were falsely and fraudulently made, that she was a free trader, such representations being made, too, with the assent of the husband

and recited in the deed, this should serve every purpose of the privy examination. It was clearly the voluntary act and deed of the *feme* defendant, since it is found as a fact that it was executed with a false and fraudulent purpose to deceive. There was, too, the assent and participation of the husband. He joined in the mortgage which recited that his wife was a free trader. This might well be, and I think was, a virtual compliance with section 1827, and of itself made her a free trader, especially as he had joined in several prior deeds and mortgages, duly registered, which contained the same recital. But if it was not, the *feme* defendant is not entitled to the protection of the law against the valid claim for reimbursement of the person she deceived by the conveyance executed by her, and by whose money thus procured she has been benefited. Before she can invoke the aid of the Court to invalidate the deed, or be heard to deny that she was a free trader, as both verbally and in the deed itself, with the concurrence of her husband, she asserted herself to be, she should be compelled to refund the money obtained upon the faith of such fraudulent conveyance. Suppose she had fraudulently and falsely represented herself as a single woman with the joinder in the mortgage, reciting that statement, of the man who was in fact her husband. Would they be allowed to hold the land, discharged of the incumbrance? Coverture should be no shelter for intentional and willful fraud. *Walker* v. *Brooks*, 99 N. C., 207. Rights of third parties not having intervened, if the conveyance is defective the *feme covert*, if living, should now be decreed, upon the findings of fact by the jury, to re-execute the mortgage with privy examination, unless the plaintiff is reimbursed, and in default thereof a decree of sale. Being dead, a decree of sale should be made as to those claiming the land as her heirs at law, unless the sum secured by such fraudulent mortgage is paid.

MacRae, J., concurs in this dissent.