VANDIFORD v. HUMPHREY.

(Filed September 19, 1905).

*Husband   and   Wife—Abandonment—Free   Trader— Evidence.*

1.  An instruction on the issue of abandonment under section 1832 of The Code, that if the husband "at the time of the execution of the deed in question by his wife, did voluntarily leave his wife, desert her, prior to the time of the execution of the deed, with the intention of forsaking her entirely and never to return," the jury should answer the issue "yes," was correct.

2.  While a safe test of the power of the wife to contract in regard to her separate property as a free trader, when abandoned by her husband, is her right to maintain an action for divorce for like cause; yet she is not required to wait six months (the time required to elapse before entitling her to bring an action for divorce) before she is permitted to make contracts.

3.  The statute (Code, section 1832,) does not require the departure of the husband from the State to enable the wife to use her property for her support.

4.  Evidence that the husband was all the time abusing his wife because she would not give him a life estate in the land; that he left and said he was not coming back any more and carried his things and his tools, buggy and harness, bed and bedding and said that he had left her for good this time, is sufficient to be submitted to the jury on the issue of abandonment.

ACTION by Jackson Vandiford and wife against John C. Humphrey and wife, heard by *Judge J. L. Webb* and a jury, at the March Term, 1905, of the Superior Court of PITT County. From a judgment for the defendants, the plaintiffs appealed.

*F. C. Harding* and *Jarvis & Blow* for the plaintiffs.
*L. I. Moore* for the defendants.

139——5

CONNOR, J. This action is prosecuted by plaintiffs, Jackson Vandiford and wife, for the cancellation of a deed executed by the *feme* plaintiff to defendants conveying a tract of land, being her separate estate. The validity of the deed is attacked for that, (1) the *feme* plaintiff was a married woman at the date of its execution; (2) the execution was obtained by fraud and undue influence; (3) the *feme* plaintiff was of unsound mind and incapable of executing a valid conveyance. The defendants admitted the coverture, but alleged that at the date of the execution of the deed, the male plaintiff had abandoned the *feme* plaintiff. They denied the other allegations of the complaint. Appropriate issues were submitted to the jury in respect to the several allegations, under instructions, to which there are no exceptions, the jury found for the defendant upon the last two issues. The plaintiffs requested His Honor to charge the jury that there was no evidence to sustain the defendants' averment of abandonment, and to the refusal to do so excepted. His Honor instructed the jury upon the first issue as follows: "Abandonment means forsaking, deserting. An eminent law writer says abandonment means the voluntary leaving of the person to whom one is bound by special relation, as wife, husband, child, deserting. The court charges you that frequent protracted absence of the husband and the practice of the wife of transacting business, nothing else appearing, would not mean abandonment. If you find from the greater weight of the evidence that Jackson Vandiford at the time of the execution of the deed in question by his wife, did voluntarily leave his wife, desert her, prior to the time of the execution of the deed, with the intention of forsaking her entirely and never to return, why then you ought to answer the first issue "yes;" but if you find that Jackson Vandiford had not abandoned his wife, deserted her, at the time of the execution of the deed in question as alleged by the defendants, then you will answer the first issue, "no." If you find that

she refused to let her husband live with her, threatened that if he stayed with her, he did so at his own risk, as testified to by him, if you believe that and if you further find that this was the cause of his leaving his wife and that he left her with the intention to return as soon as she would permit him, then this would not be abandonment and you would answer the first issue "no." To this instruction plaintiffs excepted. The jury found for the defendants, and upon the verdict judgment being rendered, plaintiffs appealed.

The undisputed facts show a most fertile field for domestic discord. The *feme* plaintiff was a widow with five children by her first husband, and owned a small tract of land. The male plaintiff was over seventy years of age. Frequent quarrels were had, followed by separations lasting several months, etc. We have examined with care the testimony bearing upon the first issue. It is true that as usual, after reconciliation and changed conditions, the husband and wife deny that there was any other trouble than a slight disturbance incident to domestic life. There is a vast amount of contradictory and conflicting evidence in regard to the declarations of both parties. The jury were invited to a very thorough investigation of the home life of the families involved in this controversy. The contention of the plaintiffs that there was no evidence to sustain the charge of abandonment, is very largely dependent upon the correctness of their view of the legal definition of the term as used in the statute, Code, section 1832. If, as contended by the learned counsel, the power of the wife to deal with her property as a free trader, arises only when her husband has left the jurisdiction of the court with no intention to return, is correct, then of course His Honor's ruling is erroneous. He concedes that this court has held in *Hall v. Walker,* 118 N. C., 377, that the statute is constitutional. He insists that, as in that case, to constitute abandonment, the husband must have left his wife with no intention of returning to her and departed from

the State. Our attention is called to a well considered case decided by the Supreme Court of Maine, which seems to sustain this view. *Ayer v. Warren,* 47 Me., 217. It is also insisted that the power of the wife to contract in regard to her separate property as a free trader, is to be tested by her right to maintain an action for divorce for like cause. This, we think, a safe test, but counsel further insist that until the time has elapsed entitling her to bring the action she should not be permitted to make contracts. This construction we think would, to a very great extent, destroy the beneficent purpose of the statute. The law requires that six months shall elapse after the injury complained of has been committed, to enable the parties to become reconciled, but it cannot be contemplated that during this time a wife who has been abandoned by her husband shall either starve or become a charge upon the charity of her friends. If she has a separate estate she should be allowed to resort to it by making contracts for the purpose of supplying the necessaries of life. The two statutes are based upon distinct reasons. The wife may and should wait six months after abandonment before rushing into court for a divorce, but she may not and should not be required to starve or go without support for that time, waiting the return of her recreant husband. We cannot reach the conclusion that the statute requires the departure of the husband from the State to enable the wife to use her property for her support. We think that His Honor correctly instructed the jury as to the law. While the testimony is conflicting we are of the opinion that there was evidence fit to be submitted to the jury. It would serve no good purpose to set it out at any length, but we note the following: Amos Stocks testified that, "He, the husband, was all the time abusing her because she would not give him a life estate in the land. He left and said he was not coming back any more. He carried his things and his tools, buggy and harness, bed and bedding. Jesse Stocks testified that

Vandiford said, "That he had left her for good this time." There was other testimony to the same effect. The *feme* plaintiff, after her husband left her, went to live with the defendant, Humphrey, who had married her daughter, and it would seem, and the jury so found, of her own free will executed the deed by which she charged upon the land a support for herself and the payment of $400 at her death to her other children. The contract seems to have been fair in its terms and freely made by her. The amount to be paid is approximately the value of the land. All suggestions to the contrary have been passed upon by the jury.

We have, after a careful consideration, found no error in the ruling of His Honor. The judgment must be
　Affirmed.