ARTHUR COUNCIL v. R. PRIDGEN and F. M. WRAY.

(Filed 17 November, 1910.)

1. Married Women — Separate Realty — Deeds and Conveyances — Privy Examination—Interpretation of Statutes—Constitutional Law.

Article X, sec. 6, of our Constitution requiring that a married woman conveying her separate real estate shall have the "written assent of her husband," the statute laws, now embodied in Revisal, sec, 952, provides the manner in which the assent of the husband must be obtained, to-wit, that the deed "must be executed by such married woman and her husband and due proof or acknowledgment thereof must be made by the wife, and her privy examination taken," etc.; and thus construed, the statutes are constitutional and valid.

2. Deeds and Conveyances—Married Women—Joinder of Husband—Privy Examination.

In order to convey a married woman's separate real estate or fix a charge upon it, her privy examination is required, and the husband must join in the deed.

3. Same—Interpretation of Statutes.

Revisal, sec. 2112, establishes a method by which a married woman may become a free-trader, and sec. 2113 provides that "the married woman therein mentioned shall be a free-trader and authorized to contract and deal as if she were a feme sole." Held, (1), The words "free-trader," "contract" and "deal," refer to contracts and trades in some business enterprise, and are restricted under this section to the dealings of the wife as a free-trader with reference to her contracts in the pursuit of the business she is engaged in; (2) the word "deal," taken in its legal significance, does not enlarge this meaning so as to confer upon a married woman power to convey her real estate, especially in view of the restrictive words of our statute, "that every

conveyance, etc., affecting the real estate of a married woman must be executed by the husband and the wife and her privy examination must be taken and certified as provided by law."

4. **Deeds and Conveyances—Married Women—Joinder of Husband—Privy Examination—Requisites.**

   A deed executed by a married woman to her separate real property, the name of the husband not appearing in the body of the deed or his signature thereto, proved on oath of a subscribing witness and registered on such probate, without her privy examination, is inoperative, and the written assent of her husband endorsed on the deed does not meet with the constitutional and statutory requirements necessary for her to make a valid conveyance.

CLARK, C. J., dissenting.

APPEAL from *W. R. Allen, J.,* at the February Term, 1910, of COLUMBUS.

Civil action to recover land. It was admitted that the property in controversy had belonged to Mrs. Sarah E. Wooten, wife of Shade Wooten, Esq., and that in June, 1893, she made a deed, purporting to convey the property. This deed, executed by herself alone was witnessed by E. W. Wooten, Jr., and was proved by the oath and examination of said witness and registered on such probate and that no privy examination of said Sarah E. Wooten was had. The name of Shade Wooten, the husband, did not appear in the body of the deed, nor did he, in any way, join therein, except that his written consent thereto, signed by himself, appeared on the back of the instrument. It further appeared that at the time said deed was made and delivered, said Sarah E. Wooten was a married woman, living with her husband, and that she was at the time a registered free-trader, according to the provisions of the statute, now Revisal, sec. 2112-2113. It was also admitted and agreed that, on the facts stated, if the deed referred to was not a valid conveyance, the plaintiff was the owner of the property; otherwise, not. The court, being of opinion that the deed in question was valid, so instructed the jury, and there was verdict for defendant. Judgment and plaintiff excepted and appealed.

*J. B. Schulken* for plaintiff.
*Donald McRackan* and *D. J. Lewis* for defendant.

HOKE, J.  Our Constitution, Article X, sec. 6, in reference
to the property of married women, provides: "The real and
personal property of any female in this State acquired before
marriage, and all property, real and personal, to which she may,
after marriage, become in any manner entitled, shall be and
remain the sole and separate estate and property of such female,
and shall not be liable for any debts, obligations or engage-
ments of her husband, and may be devised and bequeathed, and,
with the written assent of her husband, conveyed by her as if
she were unmarried."  In the very year of its adoption, the
Legislature, in the endeavor to carry out and give effect to this
provision, passed an act requiring that in order to the validity
of a conveyance or other instrument, affecting the "estate, right
or title of any married woman in lands, tenements or heredita-
ments," her privy examination must be taken by the proper offi-
cer.  Code, Civil Procedure, sec. 429, sub-sec. 6.  Re-enacted,
with some slight modifications, Laws 1868-69, ch. 277, sec. 15.
This enactment continued, in substance, through the various
codes and laws on the subject, and appearing in Revisal 1905,
sec. 952, is as follows: "Every conveyance, power of attorney
or other instrument affecting the estate, right or title of any
married woman in lands, tenements or hereditaments must be
executed by such married woman and her husband and due proof
or acknowledgment thereof must be made as to the husband and
due acknowledgment thereof must be made by the wife and her
private examination, touching her voluntary assent to such in-
strument, shall be taken separate and apart from her husband,
and such acknowledgment or proof as to the execution by the
husband and such acknowledgment by the wife and her private
examination shall be taken and certified as provided by law."
Not long after the statute was enacted, the question was raised
whether the requirement as to privy examination was not in
conflict with the constitutional provision, and was finally
brought before the Court, and in two cases at the same term and
by unanimous decision, it was held that the act was constitu-
tional.  That it did not militate against the provision that a
married woman could convey her property with the written as-
sent of her husband, but only established a form by which this

assent should be evidenced. *Southerland v. Hunter,* 93 N. C., p. 310; *Ferguson v. Kinsland,* 93 N. C., p. 337. In this last case it was held: "That deeds conveying lands of *femes* covert must be jointly executed by both husband and wife," and that the requirement as to the wife's privy examination was constitutional. Speaking directly to the question, *Chief Justice Smith,* delivering the opinion, said: "The only point made by the appellant's counsel, is that the Constitution, Art. X, sec. 6, which secures to a married woman all the property acquired previous to and since her marriage, as her sole and separate estate, free from her husband's debts, and confers upon her power to devise and bequeath, and, with her husband's written consent, to convey it, as if she were unmarried, sanctions this mode (the assent of the husband being on a separate paper). But it is for the General Assembly to provide the method by which this right may be exercised, as it has done heretofore when her real estate was not less her own, and when she was permitted to convey it only by observing a prescribed form. The requirement that the husband should execute the same deed with his wife was to afford her his protection against the wiles and insidious arts of others, while her separate and private examination was to secure her against coercion and undue influence from him. These have been deemed prudent safeguards to insure freedom of volition and action on her part when she is disposing of her real property, and these are none the less necessary now, when she retains her full real and personal estate." Both before and since these decisions and through all the various cases on the law concerning the property of married women, this one thing has been steadfastly adhered to, that in order to convey a married woman's separate estate or fix a charge upon it, her privy examination is required. *Bank v. Benbow,* 150 N. C., p. 781; *Ball v. Paquin,* 140 N. C., p. 83; *Smith v. Bruton,* 137 N. C., p. 79; *Harvey v. Johnston,* 133 N. C., p. 352; *Bank v. Ireland,* 122 N. C., p. 571; *Scott v. Battle,* 85 N. C., p. 185, and authorities cited. In *Bank v. Benbow* the ruling is: "For a *feme covert* to bind her realty, to the payment of a note, she must execute a formal conveyance or some paper writing which in equity may be a charge upon her separate estate, accompanied

by the written assent of her husband and her privy examination." In *Smith v. Bruton,* 137 N. C., at page 82, *Montgomery, Judge,* delivering the opinion, said: "A married woman in North Carolina can be bound only in two ways, by her deed duly executed with the written assent of her husband and with her privy examination or by a decree of a court of competent jurisdiction. As to the requirements of the first method, the decisions of the Court are very numerous." These decisions too, and many others that could be noted, are to the effect that in order to a valid conveyance of a married woman's land, the assent of her husband must be included by his joining with her in the body of the deed. Such joinder is not required to charge her land, the written assent of her husband may be otherwise expressed, but to convey, the husband must join in the deed, and in both the privy examination is required. In *Ball v. Paquin,* 140 N. C., 83, *Connor, Judge,* after deciding that the land of a married woman, under certain circumstances, may be charged by necessary implication, under a contract for repairs, entered into with the written consent of her husband and to which her privy examination had been taken, in reference to this last requirement, said: "It is evident that the judges were referring to the formalities with which such contracts should be executed. In *Bank v. Howell,* 118 N. C., 271, it is said that she cannot charge her separate real estate 'except upon privy examination.' In *Bank v. Ireland,* 122 N. C., 571, the present *Chief Justice,* writing in that respect for a unanimous Court, referring to *Farthing v. Shields, supra,* and other cases, said: 'Those decisions do not require that the charge shall be made by mortgage.' In so far as it was intimated that no privy examination was necessary, the then Chief Justice and other Justices did not concur. The conclusion is irresistible that where the contract has all of the elements required by the statute and is reduced to writing, assented to by the husband, and the wife is privately examined separate and apart from her husband, it is binding upon her separate real estate."

It is not seriously controverted that the cases referred to decide the question as stated, but it is contended that the present conveyance, lacking as it does both the joinder of the husband

and the privy examination of the wife, should be upheld, by reason of the fact that the wife was registered as a free-trader, under sections 2112 and 2113 of Revisal, but in view of other provisions of our statute law, bearing upon this question and authoritative decisions of courts here and elsewhere, we are of opinion that these sections in question do not have the effect contended for. Section 2112 establishes the method by which a married woman may become a registered free-trader, and section 2113 provides that "the married woman therein mentioned shall be a free-trader and authorized to 'contract and deal as if she were a *feme sole.*'" Both the words free-trader and the words "contract and deal" refer, in their ordinary acceptation, to contracts and trades in some business enterprise, and do not, primarily, include or describe conveyances of reality. It is urged that while the word "contract" might not have such significance, the word "deal" does, and the fact that this word is added necessarily shows an intent on the part of the Legislature to confer the power to convey the realty, but this, we think, an unwarranted deduction. Both words, as stated in their primary acceptation, refer to the ordinary bargains and trades incident to some business enterprise and these a free-trader may make. If there is a difference between the words, the term contract should be construed as referring to executory obligations, while deal would uphold her trades and bargains executed, but both, as a general rule, are terms which apply to the ordinary incidents of business. In Black's Dictionary, the word deal is said to mean, "to traffic, to transact business, to trade," etc. In 8 A. & E., p. 846, the same definition is given. In Cyc. it is said that deal as a noun, as applied to intercourse between parties, refers to any transaction of any kind between them, but as a verb, it means to "traffic to transact business, to trade." Accordingly, in both of these last publications, in describing the powers to be ordinarily exercised by a statutory free-trader, reference is made to those contracts usually incident to some business enterprise, as in 21 Cyc., p. 1338, where it is said: "When a married woman trades by authority of a statute, as a *feme sole,* she has all the powers and liabilities incident to her business. She may buy and sell on credit, execute notes, sue and be sued, and may

be adjudged a bankrupt. She may hire assistants and clerks,
appoint agents and even employ the service of her husband."
15 A. & E., p. 755, and Harris on Contract of Married Women,
sec. 508-510, *et seq.,* are to like effect.

So far as we have examined, in those States where a contrary
ruling has been apparently made, the statute either conferred
the power to convey realty, in express terms, or the powers arose
by a decree of some court, fixing the married woman's status, and
the decree, in terms, gave her the power to convey her land. And
if a different principle was shown to obtain in other jurisdic-
tions, it could not be allowed to prevail here, for the words to
"contract and deal" are at best indefinite as to the question we
are discussing and the significance contended for is not per-
missible in the face of the explicit declaration of our statute,
"that every conveyance, power of attorney or other instrument,
affecting the estate, etc., of a married woman, must be executed
by the husband, and the wife and her privy examination must
be taken and certified as provided by law." There are no cases
in our own court that directly decide the question presented in
this appeal, the power of a registered free-trader to convey her
real property, without joinder of her husband and without her
privy examination, but there has been reference to it at differ-
ent times and so far as they bear upon it, their expression is
against defendant's position. Thus in *Smith v. Bruton, supra,*
a case in which the right of a married woman to enter into an
agreement to arbitrate the question of title to her land, and in
which it was decided that such agreement was not binding with-
out joinder of her husband and her privy examination taken,
*Montgomery, Judge,* delivering the opinion, among other things,
said: "That the plaintiff was a free-trader, can make no differ-
ence. As we have said, there are only two ways by which a
married woman can dispose of her real estate, one by deed with
the written assent of her husband and her privy examination,
and the other by decree or judgment of a court of competent
jurisdiction." And in *Wilkes v. Allen,* 131 N. C., p. 279, it
was urged that because the married woman, plaintiff, was a reg-
istered free-trader, the statute of limitations should run against

153—29

her, but the court held otherwise on the ground that her position as free-trader did not affect the explicit language of the statute as it then was, that such statute should not run against a married woman. We are not inadvertent to the cases of *Vandiford v. Humphreys,* 139 N. C., 65, and *Hall v. Walker,* 118 N. C., 377, in which conveyances by married women were upheld without privy examinations, but it will be noted that both of these were cases of abandonment and are regulated and controlled by a separate and distinct section of our Revisal, *i. e.,* sec. 2117. That section, after providing that a married woman, abandoned by her husband, shall be deemed a free-trader, so far as to be competent to contract and to be contracted with and to bind her separate property, in express terms confers this power: "And she shall have power to convey her personal estate and her real estate without the assent of her husband." This additional provision is not contained in the section under which the *feme covert* acted, and the fact that in her case she was only given the power "to contract and deal," while in the case of abandonment, the power to convey real estate is expressly given, supports our conclusion that these words, "contract and deal," did not and were not intended to confer upon an ordinary free-trader the right to convey realty, except in the way provided by law.

We have been referred to several poems, sacred and profane, in which the word deal is given a more extended meaning than that which obtains in this opinion, but these references, while, to some extent, persuasive, are far from convincing. It is well understood that in works of that character authors are allowed a broader sweep, in the matter of language, its use, pronunciation, and even its orthography than is ordinarily permissible, and we think it better, in construing statutes and instruments concerning the devolution and transfer of property, to follow the meaning established by tribunals charged with the duty of making authoritative deliverance on these subjects.

We are of opinion that there was error in the instructions given by his Honor, and that, on the facts established, the verdict and judgment should have been for the plaintiff.

Reversed.

COUNCIL *v.* PRIDGEN.

CLARK, C. J., dissenting. The sole question presented in this case is whether a conveyance of land by a married woman who is a free-trader and has received the purchase money, the deed being endorsed with the full written assent of her husband, and thereafter duly probated and admitted to registration, is void against the heirs—who do not tender the return of the purchase money—because her privy examination is not shown to have been taken.

· If the deed is not valid, the heirs certainly should not be allowed to set it aside, and recover the land unless they should tender the return of the purchase money. This is elementary justice, and was laid down in *Burns v. McGregor,* 90 N. C., 222, citing *Scott v. Battle,* 85 N. C., 184, and other cases, and has been cited and reaffirmed often since. See cases cited in the annotated edition, 90 N. C., 226.

The point, however, as to the validity of a deed executed by a married woman who is a free-trader, executed with the written assent of her husband (which is all that the Constitution requires), but without privy examination, has never before been presented to this Court for decision. No question as to the power of married women to contract arises in this case. It is true *Montgomery, J.,* so intimates *obiter,* in *Smith v. Bruton,* 137 N. C., 83, but he immediately adds that in that case the rights of a married woman as a free-trader did not arise. Besides, his general expression, not pertinent to the case in hand, that no married woman could make a conveyance of land without a privy examination was incorrect. We know that the statute in several instances permits a married woman to make a conveyance of her land, without privy examination, even without being a free-trader, and though without her husband's assent. Revisal, 2117, 2116, 2111, 2096 and 956. Here the married woman was a free-trader, her husband's assent and joinder in the deed was expressed and she received the purchase money, and this action seeks to recover the land without repayment of the purchase money.

In *Williams v. Walker,* 111 N. C., 608, it was practically held by the whole Court that if the grantor had been a free-trader her deed would have been valid without privy examination.

COUNCIL *v.* PRIDGEN.

The question being before this Court for the first time we are free to decide it without infringing upon any precedent. The general provision in Revisal, 952, requiring the wife's privy examination is subject to the above statutory exceptions. At this session in *S. v. Holder,* it was held that the Revisal must be construed as a whole, and that where one section provided that "all offenses punishable by death or imprisonment in the State's prison," should be felonies, but five other sections prescribe for certain offenses, punishment in the State's prison, adding that they should be misdemeanors, the latter are exceptions to the general rule, and hence not felonies.

In Revisal, 2117, it is provided that if any husband shall abandon his wife or maliciously turn her out of doors she "shall be *deemed a free-trader*" and shall have power to convey her real estate "without the assent of her husband." This statute was held constitutional. *Hall v. Walker,* 118 N. C., 377; *Finger v. Hunter,* 130 N. C., 531; *Vandiford v. Humphreys,* 139 N. C., 67; *Brown v. Brown,* 121 N. C., 8.

Revisal, 2116, provides that if the husband is living separate from the wife either by decree of court or under deed of separation, or if he is an idiot or a lunatic, the wife "shall be a free-trader" and can "convey her real estate without the assent of her husband."

Revisal, 2111, provides that if the husband shall separate from his wife and live in adultery, she may "sell and convey her real property as if she were unmarried."

Revisal, 2096, provides that no leases of real estate by a married woman, *"not a free-trader"* shall be valid without privy examination. This shows the legislative understanding is that if she is a free-trader the conveyance is valid without privy examination. *Burwell, J.,* in *Williams v. Walker,* 111 N. C., 608.

Revisal, 959, also dispenses with privy examination where the conveyance is of the husband's land and the wife is a lunatic. The requirement of a privy examination has therefore many exceptions.

Revisal, 2113, prescribes that when a wife has been duly made a free-trader "she may contract and deal as if she were a *feme sole.*"

If the sole object of this statute had been to authorize the free-trader to contract as a *feme sole,* the statute would have so expressed it. It would have stopped with the word "contract" which expresses the idea and power as fully and completely as possible. By adding the words *"and deal* as if she were a *feme sole,"* it was meant to give her complete and full powers as she possessed before she was married, or after she ceased to be so. The word "deal," evidently could mean only "convey," because by the Constitution a married woman has full power to dispose of her personalty in any mode whatsoever, as if *feme sole.* *Vann v. Edwards,* 135 N. C., 661; and she could dispose of her realty by will, and requires only the husband's written assent as to conveyance of her realty (which she had here). The addition of the word "deal" in connection with the words "as if she were a *feme sole"* are meaningless, therefore, unless it authorizes the wife to execute a deed, when she is a free-trader, free from all requirements of any kind, save the constitutional one that she must have the written assent of her husband. What else could "deal as a *feme sole"* signify? For the statute already provides that she could contract.

Besides, the word "deal" is a much broader word than "contract," and is therefore not a mere repetition of it. The word "deal" among its primary meanings as defined by both Webster and Worcester signifies—1. Give or transfer. 2. Transact. In this they are borne out by the usage of the best English writers.

"Deal thy bread to the hungry." Isaiah, lxviii, 7.

"I could deal kingdoms to my friends and ne'er be weary." Shakespeare, Timon, Act. I, sc. 2.

"As rich men deal gifts." *Ib.* lv., 3.

"Deal damnation round the land." Pope's Universal Prayer.

"With a broken truncheon deals his blows." Dryden.

Certainly the word cannot, therefore, be regarded as a mere duplication of the word "contract." This is true also of the second meaning above given of general transaction:

"He that deals between man and man." Lord Bacon.

"The Jews have no dealings with the Samaritans." John, lv, 9.

On the authority of the lexicographers and the best writers

the word "deal" has a far different meaning from the word "contract." To restrict the meaning of the word to "contract" would be to give it a signification much narrower than that which naturally belongs to it, and would uselessly duplicate a word already used. The natural meaning which should be given the words *"and deal as if she were feme sole"* is to add something beyond the power of contracting. The word "and" means "in addition," and the word "deal" evidently shows that the Legislature intended to give a free-trader in all other respects the same freedom and power of dealing with her property "as if she were a *feme sole,"* subject, of course, only to the constitutional restrictions that a married woman must have the written assent of her husband to conveyances of her realty.

What is the reason, what is the necessity, to construe the liberal words of the Legislature, which treat a free-trader "as if she were a *feme sole"* to be *not* "as if she were a *feme sole"* except as to "contracting?" The requirement of a privy examination is of no benefit to any one and is simply a vexation and a useless expense which in the aggregate is no small sum. We have no reason to believe that the married women of North Carolina are in any wise inferior to the married women in our adjoining States, South Carolina, Georgia, Tennessee and Virginia, in all of which this useless formality has been abolished these many years, without any detriment to any one. Nor are the married women of North Carolina inferior to those of New York or in the other States of this Union, in all of which save perhaps 8 or 9 this useless formality has been abolished for many years; nor to those in England and other countries of the British Empire, in which the privy examination of a married woman has long since been relegated to the company of the feudal tenures and the refinements of special pleading. There is no reason that North Carolina should retain useless and vexatious formalities which have been discarded elsewhere.

Viewed in the light of Revisal, 2113, and giving to the words of the statute their ordinary signification, it would seem that the Legislature intended to confer upon free-traders not merely the power of contracting, but in all other respects the same freedom "as if she were a *feme sole."* It is the natural and ordi-

nary meaning of the words used, and there can be no reason to give them an unusual and restricted meaning; a meaning, in short, that strikes out of the statute the words "and deal," if they meant no more than has already been expressed by the word "contract." But independently of the statute, the parties who paid the full purchase money for this land and received the deed of the married woman and free-trader, with the written assent of her husband endorsed, should not be deprived of it. If the grantees had received the deed from a married woman who is a *quasi* free-trader from implied consent under Revisal, 2117, 2116, 2111, 2096 or 956, they could not be deprived of it. The deed would be admittedly valid, under the decisions of this Court, above cited. *A fortiori,* they should not be deprived both of the land and of the purchase money when they have taken the deed from a free-trader who was made such with the express consent of the husband under Revisal, 2113, and he is also joined in the deed and expressed his full assent to the conveyance. In *Bell v. McJones,* 151 N. C., 85, this Court has held recently that where a married woman has received the purchase money for her tract of land she would not be allowed to profit by the fraud of her husband, who palmed off on the purchaser a deed conveying a smaller tract than the one she had contracted to sell. Here the heirs at law are seeking to deprive the purchaser not merely of a part of the land, as in *Bell v. McJones, supra,* but to take the whole of it back without restoring any part of the purchase money.

Independently of the terms of Revisal, 2113, empowering a married woman to deal "as if she were a *feme sole*," and of the equitable principle stated in *Burns v. McGregor,* 90 N. C., 222, and other cases cited by that case or which have approved it since, to the effect that a married woman cannot disavow her contract and notwithstanding retain the consideration she has received therefor (an elemental principle of justice) there is this further consideration, that the Constitution, Art. X, sec. 6, provides that a married woman, "with the written assent of her husband," may convey her realty "as she were unmarried." It would seem clear, from this language that the Legislature could not add any other requirement as to conveyances by a married

woman of her realty which is not exacted, of unmarried women. The Convention was not inadvertent to the matter of privy examination, for in the same article, sec. 8, it retained it as to a conveyance of the homestead. It therefore dispensed with the privy examination intentionally in sec. 6, when it provided that a married woman could *convey as if unmarried,* provided she had the written assent of her husband.

Privy examination is a substitute for a fine and a recovery, and as such is brought forward in Revisal, 952, evidently by inadvertence to the change made by the Constitution. The proper construction of Revisal, 952, to make it conform to the Constitution, is that the privy examination is only required in the instance in which the Constitution retains it. It is true that we have cases which hold contrary to this view, but there is not one, as we have seen, which holds that a privy examination is required of a free-trader who is authorized by Revisal, 2113, "to contract *and deal as if she were a feme sole."*

In the recent case of *Ball v. Paquin,* 140 N. C., 89, this Court said, that "in the absence of controlling decisions to the contrary," it would hold otherwise than our line of decisions had held as to the right of married women to contract, and on page 96 expressed the wish that the Legislature would bring the statute law "into harmony with the best modern thought and conditions." The same was said in *Bank v. Howell,* 118 N. C., 273, and in other cases.

As to the point now presented, there has been no decision rendered heretofore. If Revisal, 2113, empowers a free-trader to convey, with the written assent of her husband, without privy examination, it conforms to the Constitution, to Revisal, 2096, and as to leases by married women, and is "in harmony with the best modern thought and conditions," *Ball v. Paquin, supra,* for, as already said, privy examination has been abolished in all other countries except possibly in 8 or 9 of our States. No evil results have followed. In these days, we no longer presume either as a matter of fact or of law that a husband will intimidate his wife into consenting to a conveyance or that wives will be intimidated. If it were otherwise, the intimidation would be renewed if the wife did not assent before the justice of the

peace. Such ceremony certainly does not possess the protection which was afforded by fine and recovery which was had in open court, and which has been abolished everywhere. There can be no reason for the retention of its ineffective substitute.

It is certainly a great hardship that these defendants shall lose the land for which full value was paid, and for which they received a deed executed by a married woman who was a free-trader, when the deed was executed with the written assent of her husband, duly adjudged, probated and registered, and under a Constitution which guaranteed to all married women the right to convey their realty, with the sole requirement that the conveyance should be with the written assent of the husband.