MARY E. SCOTT v. L. F. BATTLE and others.

*Deed of Married Woman—Lien for Purchase Money—Betterments—Notice—Damages.*

1. Where the husband of a *feme covert* does not join in a conveyance of her land, and she is not privily examined as to her voluntary assent to the deed, the attempted conveyance is an absolute nullity; and the vendee has no lien on the land, or right of action against the woman personally, for the purchase money paid by him.

2. Such purchaser, being charged by implication of law with knowledge

of the invalidity of his title, cannot maintain a claim for "betterments" under the act of assembly (Bat. Rev., ch. 17, §§ 262 a et. seq.,) for improvements put by him upon the land.

3. One who acquires the estate of the first purchaser, under a mortgage sale, is affected with notice of the defect in the direct chain of his title, and stands in no better plight as regards improvements.

4. While purchasers so situated cannot claim for betterments *as such,* they will be entitled to a fair allowance as an equitable counterclaim, to the demand of the real owner for the rents and profits of the land.

(*Green* v. *Branton*, 1 Dev. Eq., 500 ; *Askew* v. *Daniel*, 5 Ired. Eq., 321 ; *Kerns* v. *Peeler*, 4 Jones, 226 ; *Harris* v. *Jenkins*, 72 N. C., 183 ; *Jones* v. *Cohen*, 82 N. C., 75 ; *Towles* v. *Fisher*, 77 N. C., 437 ; *Wharton* v. *Moore*, 84 N. C., 479 ; *Reed* v. *Exum, Ib.*, 430 ; *Dowd* v. *Faucett*, 4 Dev., 92 ; *Elliott* v. *Pool*, 6 Jones Eq., 42, cited, commented on and approved ; and *Daniel* v. *Crumpler*, 75 N. C., 184, overruled.)

CIVIL ACTION to recover land tried at Spring Term, 1880, of NASH Superior Court, before *Avery, J.*

The facts are stated in the opinion of this court. The judge below held that plaintiff's deed of 7th December, 1858, to defendant, Battle, did not convey her interest in the land in controversy ; but that she was not entitled to recover possession thereof until she repaid the purchase money paid to her by said Battle, and also the value of the permanent improvements put upon the land by Battle. The court held further that the claim of plaintiff for unpaid residue of legacy bequeathed by one W. L. Battle for the education of her daughters, in consequence of the failure of defendant Battle to pay the same, which was set up in the replication, cannot be allowed as a set-off to the purchase money paid and the value of the improvements made by defendant Battle ; and also, that the sale and deed by a commissioner, appointed for that purpose, executed to defendants, Cobb and Batchelor, did not divest the title of plaintiff. And thereupon the judge framed issues for a jury, and retained the cause for further orders, and both parties appealed.

*Messrs. Davis & Cooke* and *Gilliam & Gatling,* for plaintiff.
*Messrs. Bunn & Battle,* for defendants.

RUFFIN, J. This cause comes here upon an agreed statement of facts in substance as follows:

In the year 1845, the plaintiff intermarried with one T. H. Scott, and lived with him until the year 1850, when she separated herself from him, and from that time until his death in 1876 they lived apart with the exception of one short interval—he at no time after the day of their first separation assuming any control over her property.

At the time of her marriage, the plaintiff was seized in fee of the land in controversy, and continued to possess the same until the 7th day of December, 1858, when she conveyed it to her brother the defendant, L. F. Battle, by a deed to which her husband was not a party. The deed was attested by two witnesses, and in 1872 it was admitted to probate upon the oath of one of them, and registered without her being privily examined in regard thereto.

At the time of the execution of the deed, the said L. F. Battle gave his note to the plaintiff for $600 upon which she brought suit, and at spring term, 1870, recovered judgment for the full amount of principal and interest, and in 1871, collected the same in full and used the money.

On the 14th day of March, 1870, just after the recovery of said judgment, the defendant, L. F. Battle, borrowed the sum of $3,000 of one Trevathan and executed a mortgage upon the said land as a security therefor, and failing to pay the same the said Trevathan sued for a foreclosure and obtained a decree under which the land in question was sold by a commissioner, when the defendants, Cobb and Batchelor, became the purchasers and took a deed under the sanction of the court in December, 1877.

The said Trevathan had no notice of any defect in the title of L. F. Battle at the time he took the mortgage, unless

the deed which plaintiff had given to defendant Battle was notice. Neither had defendants Cobb and Batchelor notice of such defect, except such as was given to them by this action which was instituted in May, 1877, and was pending at the time of their purchase—though they and L. F. Battle had notice of plaintiff's coverture.

During the time that L. F. Battle was in possession of the land he put upon it permanent improvements.

In 1859, one W. L. Battle died leaving a will by which he bequeathed to defendant, L. F. Battle, property valued at $10,000, and charged him with the sum of $1,000 to be paid to plaintiff for the benefit of herself and daughters—the interest to be used in their education and the principal to be theirs at the death of plaintiff. Of the amount thus bequeathed there has been paid only the sum of $320 in 1876 and the plaintiff has been compelled to advance her own money for the education of her daughters.

The questions submitted for the decision of the court are:

1. Is the plaintiff entitled to recover the possession of the land?

2. If so, is she liable to a charge for the purchase money paid her by the defendant Battle, and is the same a lien on the land?

3. Is she liable, and the land subject to a lien, for the value of the improvements put upon it by said defendant?

4. If so liable for purchase money and improvements, is she permitted to use as a counter-claim the amount still due her from said defendant upon the legacy to herself and daughters?

The plaintiff's right to the possession of the land cannot be questioned. The statute imperatively says that in order to effectually pass the estate of a married woman in lands, the conveyance must be executed jointly with her husband and after due proof or acknowledgment thereof as to him,

she shall be privily examined as to her voluntary assent thereto. Bat. Rev. ch. 35, § 14.

To properly understand the effect of these provisions it is necessary to remember that the statute is an enabling, not a disabling one.

At common law a married woman could not by uniting with her husband in a deed effectually convey lands of which she was seized in her own right, and there was but one mode known to the law by which she could do so, to-wit, by uniting with him in levying a fine. This she was permitted to do because it was supposed that the publicity of the occasion ( it being done in the face of the court ), and the care used by the judge to ascertain by a private examination whether her assent was freely given, afforded sufficient protection against the undue influence or authority of her husband. The statute confers upon her the power to convey by a simpler mode, but it prescribes the terms, and without their strict observance the act stands as it would at common law—absolutely null and void. The instrument executed by the present plaintiff to the defendant, Battle, lacked both of the essential elements to constitute it her deed—its joint execution by the husband and her own private examination—and consequently it is wholly inoperative. *Green* v. *Branton*, 1 Dev. Eq., 500 ; *Askew* v. *Daniel*, 5 Ired. Eq., 321. *Keerns* v. *Peeler*, 4 Jones 226 ; *Harris* v. *Jenkins*, 72 N. C. 183.

It would seem that the same reasoning must be a full answer to the defendant's demand upon the plaintiff for the restoration of the purchase money which she has received and used.

The incapacity of a married woman in law is not restricted simply to conveyances of her estate by deed, but extends to every contract, rendering her utterly unable to make any that can affect her estate either real or personal, except such as is technically known as her *separate estate*, that is, such as

may have been settled upon her by express deed or other instrument.

In no case will the law imply a promise on her part, and every one who deals with her is held to do so with a knowledge of her disability.

It is this disability of a married woman to make any contract, which we think distinguished her case from those in which a purchaser under a parol contract, void under the statute, has been allowed his claim for a restoration of the purchase money paid and compensation for his betterments. In such cases the ruling of the court has proceeded upon the idea that though the contract be void, the party making it had capacity to do so, and the very ground of the relief granted is that the vendor, by making such an agreement and thereby inducing the vendee to expend his money on the land, has obtained an unconscientious advantage which a court of equity will not permit him to use. But can this reasoning hold good when there exists as in the case of a feme covert no power to contract, and when indeed the law itself declares she shall not do so? We are referred however to the case of *Daniel* v. *Crumpler* 75 N. C., 184, as one in which the rule just spoken of governing parol contracts for the sale of land, was applied to such an agreement to sell by a married woman, and she was not permitted to oust her vendee until she had repaid the purchase money and the cost of improvements. On looking to the case, the fact that the plaintiff was a married woman seems not to have been observed by the court, at least there is no mention made of that circumstance in the opinion. So far as we can see, the point passed *sub silentio,* as if it had been the case of an ordinary vendor, resting under no disability, seeking to avoid his parol agreement; and regarding the decision to be inconsistent alike with precedent and principle, we do not feel at liberty to follow it.

In the case of *Askew* v. *Daniel,* 5 Ired. Eq. 321, it is said

that the deed of a feme covert, until she is privily examined by the proper authorities is *mere blank paper*, so utterly void, that even if it contain a stipulation in her own behalf, she cannot have the benefit thereof.

1n *Green* v. *Branton* 1 Dev. Eq. 500, the court say that a feme covert can be bound as to her land ·in only two ways, first, by her deed executed jointly with her husband, with her privy examination thereto, and secondly, by the judgment of a competent court, and that if her deed be not executed as required by law, it is an absolute nullity, *under which no equity whatsoever can be set up.*

In 1 Bishop on married women §599 the principle is thus stated : If there is a defect in the wife's conveyance rendering it void at law, it is equally so in a court of equity, and even though the purchase money has been paid.

In *Martin* v. *Develly*, 6 Wend., 9, the court of errors for the state of New York held that a deed for lands executed by a married woman but not acknowledged pursuant to the statute, was absolutely void, and was in no wise aided by the payment of the purchase money. And so far from holding that the wife's land was subject to the lien of such purchase money, there was a clear intimation on the part of the court that the purchaser's only chance for redress was against the estate of the husband, and leave was given him to amend his bill so as to present his demand in that shape.

The supreme court of Ohio, ·in the case of *Purcell* v. *Gochom*, 17 Ohio, 105, say, that no precedent can be found of a decree against a married woman to convey lands upon the ground of her having agreed to do so, whether upon a full consideration paid or not, and the fraud of the wife in the transaction can make no difference.

And this court, in the case of ·*Jones* v. *Cohen*, 82 N. C., 75, where a husband and wife disaffirmed a deed for the wife's land made during coverture, on the ground of her infancy, held that the purchase money paid, and which had been

received by the husband, was his individual debt, without once suggesting that it created any lien upon the wife's land, which was the subject of the sale.

Upon principle, too, it seems impossible to conceive that the law will ever permit that to be done indirectly which it forbids to be done directly, or that it will give its countenance to a doctrine which must subvert its whole theory in regard to the contracts of married women. To do so would be equivalent to saying that a feme covert cannot by express deed, unless privately examined thereto, convey or charge her lands, and yet may by a mere contract to sell and the acceptance of the purchase money, create such a lien upon it as the *court of equity* will enforce by a sale against her will.

If this be tolerated, then the statute intended to regulate the contracts of a married woman has no longer any virtue left in it, and all the teaching of the common law as to her disability is swept away.

As to her not being privileged to commit a fraud : There can grow no fraud out of the *contract* of a married woman. It stands upon its own strength both in law and equity. If perfect, then, well and good. If imperfect, then it is an absolute nullity, no matter upon what consideration; and as said in *Towles* v. *Fisher*, 77 N. C., 438, no one can reasonably rely upon the contract of a married woman, or on a representation as to her intentions, which at best is in the nature of a contract, and by which he must be presumed to know that she is not legally bound, and it is only in the case of a pure tort altogether disconnected with a contract, that any estoppel against her can operate.

If in a case like the present a feme covert should retain and have actually in hand the money paid her as the consideration for her imperfect and disaffirmed contract, her vendee would be permitted to recover the same at law, or if he had converted it into other property so as to be traceable, he

might pursue it in its new shape by a proceeding *in rem*, and subject it to the satisfaction of his demand. But if she has consumed it, as it is admitted this plaintiff has done, the party paying it is without remedy; and this, because of the *policy* of the law which forbids all dealings with femes covert, unless conducted in the manner prescribed by the statute, and which throws the risk in every such case upon the party that knowingly deals with her.

We hold, therefore, that the plaintiff is not personally liable to a charge for the money paid her by the defendant Battle, nor is her land in controversy subject to a lien therefor.

The question as to the improvements put upon the plaintiff's land stands, we think, upon a different footing from that concerning the purchase money paid, and should be determined by reference, not merely to the invalidity of her contract of sale, but to the *bona fide* belief of the party making them as to the character of the title under which he held possession at the time. Admitting the plaintiff's deed to be wholly void *ab initio*, all she can ask is to get back her own, and at its original value, together with a just compensation for its use in the meantime by way of reasonable rents. All else above this is the fruit of another's labor or money bestowed upon the premises, and she can have no claim to be enriched thereby, provided it was innocently done, and in an honest belief that the party's title to the land was good. But on the other hand, if not done *bona fide*, and the party making the improvements should *know* that his claim to the land was not a valid one, then the law deems it his folly, and will allow him no compensation therefor. And especially should this be so if he act knowingly under a contract which the law declares *void*, because against its well known policy.

As has been several times said, this equity concerning *betterments* is of recent growth, and it has been diversely ap-

plied by different courts according to what seemed to them to be natural equities growing out of the facts presented in the several cases; and as might be expected in such a state of things, the decisions sometimes run counter to each other, thus proving the necessity for the establishment of some fixed rules in regard to the matter, and a strict adherence to them in order that the *law may be known*, and the rights of parties depend thereon, and not upon the discretion of the judges and their peculiar sense of what is equitable and right.

In the very recent case of *Wharton* v. *Moore*, 84 N. C., 479, this court took the position, that the party claiming for betterments must show not only that he meliorated the land, but that he did so under an honest conviction that the land was his; and it was there held that the constructive notice, to be derived from the registration of a mortgage, was sufficient to bar the claim; and still more plainly was this principle illustrated in the case of *Reed* v. *Exum*, reported in the same volume at page 430. There, the plaintiff sought to avoid his deed upon the ground of duress, and was allowed to do so, but was charged with the ameliorations by which the vendible value of the land was increased, and in delivering the opinion of the court the present chief justice justifies the charge upon the express ground that it was the duty of the plaintiff to have moved promptly to have his deed vacated, and that by his not doing so, the other party might reasonably have inferred a purpose not to do it at all, and therefore might *innocently* and under an honest belief of title have made the improvements. The case of *Thomas* v. *Thomas*, 16 B. Monc., 420, to which our attention has been kindly directed by a disinterested gentleman of the bar is on all fours with the present. There, the land of a feme covert was sold and conveyed by the deed of herself and husband, but so imperfectly acknowledged by her as to be inoperative. The purchaser made improvements and

resold to another who made additional improvements, and the question was whether the wife should account for the same. The court, being the court of appeals for the state of Kentucky, held that she should not account for those made by the first purchaser who had notice of the defect in his title, and could not therefore be considered as having expended his money innocently, but should account for those made by the sub-purchasers who acted under an honest belief as to the soundness of their title. This, we think, is the correct principle, and we have found no case in which compensation for improvement has ever been allowed to a conscious wrong-doer.

Applying this principle to the case in hand, we conclude that the defendants Cobb and Batchelor cannot be allowed their claim for the improvements made upon the land in question. They have " to work out their equity" through their co-defendant Battle, and can occupy no higher ground than he did, and he was in law a *trespasser* at the time he made the improvements, and was known to himself so to be. The law would be unfaithful to itself to compensate a party for any loss sustained in so tortious a transaction. Still when the jury come to inquire into the plaintiff's damages on account of the use and detention of her lands, they will be at liberty, and indeed in duty bound, to make a fair allowance out of the same for improvements of a permanent character and such as she will have the actual enjoyment of. That such an allowance could properly be made by the jury was said in *Dowd* v. *Fawcett*, 4 Dev., 92, notwithstanding it was at the same time adjudged that the defendant's claim for improvements *as such* would not be recognized by the court.

This renders it unnecessary that we should determine the right of the plaintiff to use her demand for her unpaid legacy, as a defence to the counter-claim set up in the answer, and we forbear to do so, though it would seem at first blush

that her case comes within the rule of an equitable set-off as applied in the case of *Elliot* v. *Pool,* 6 Jones Eq., 42.

The judgment of this court is that the plaintiff is entitled to recover the possession of the land sued for, and that neither she nor her land is subject to any charge for the purchase money paid or the improvements made by the defendant L. F. Battle, and to this extent the judgment of the court below is reversed.

Let this be certified to the superior court of Nash county to the end that the case may be proceeded with according to law.

In our discussion of this case, it will be understood of course that we have been speaking throughout with reference to the law as stood prior to the adoption of our recent marriage act.

PER CURIAM.                          Modified.