M. W. WARREN v. W. H. DAIL, SR., AND M. V. DAIL.

(Filed 8 December, 1915.)

1. **Married Women—Separate Realty—Constitutional Law—Deeds and Conveyances—Privy Examination—Contracts to Convey—Statutes.**

Before the enactment of the Martin act, being ch. 109, Laws 1911, our statutes defining the status of married women in reference to their capacity to make an executory contract, notably Revisal, secs. 952, 2107, 2094, 2112 and 2113, were upheld as valid with reference to the provisions of our Constitution, Art. X, sec. 6, that "the real property of any female in this State acquired before marriage, and all property, real and personal, to which she may, after marriage, become in any way entitled, shall be and remain the sole and separate estate and property of such female . . . and, with the written assent of her husband, conveyed by her as if she were unmarried"; but were not construed so as to permit a married woman, without the privy examination taken, to make executory contracts which would be a charge upon her separate real estate.

2. **Same—Damages.**

Chapter 109, Laws of 1911, known as the Martin act, permitting a married woman to contract with reference to her separate property or estate as if she were a *feme sole*, is constitutional and valid, and by express terms excepts only from its provisions conveyances "of her realty unless made with the written assent of her husband as provided by sec. 6 of Art. X of the Constitution," and requires that her privy examination as to the execution of the same be taken as now required by law. The statute having expressly reserved "conveyances" of a married woman of her realty from its effect, the exception is not held to apply to her contracts to convey her realty, and where such examination has not been obtained in such contracts, and she refuses to perform them for that reason, equity cannot enforce specific performance, but damages may be awarded against her in an action at law for the breach of the contract, which, under our Code practice, are administered in one court.

3. **Married Women—Contracts to Convey—Separate Realty—Deeds and Conveyances—Privy Examination—Equitable Owner.**

The Martin act being construed to permit a married woman to contract with regard to her separate property as if she were a *feme sole*, except as to her conveyances of her realty, in which case her privy examination, etc., is required, the equitable principle which regards the holder of an interest in lands as the real owner cannot defeat the legislative intent by making the reservation apply to her contracts to convey her realty also.

4. **Same—Damages—Statutes.**

The prohibition of the Martin act that a married woman may not convey her separate real property except upon her privy examination being

WARREN v. DAIL.

duly taken, does not prevent the application of the usual rule of contracts, that, upon their breach, damages are recoverable, so as to deny a recovery of damages where a married woman has contracted to convey land, without her privy examination taken, and fails in her performance thereof, specific performance being regarded as additional and supplementary to the rule for damages.

**5. Same—Consent of Husband.**

The rule that a married woman is liable in damages for failure to specifically perform her contract to convey her lands under the Martin act may not be successfully defeated upon the ground that she may be unable to get the consent of her husband to the conveyance, in the absence of any bad faith.

**6. Married Women—Separate Realty—Contracts to Convey—Impossible Performances—Damages—Equity Jurisdiction—Code Practice—Statutes.**

The rule that where an executory contract incapable of specific performance was entered into by the complaining party with knowledge of the fact, damages for its breach were not recoverable, was addressed to a suit brought in equity where legal damages were not administered, and to the jurisdiction of the court therein, and has no application under our Code procedure where legal and equitable remedies are administered in the same court.

CLARK, C. J., concurring; BROWN, J., dissenting; WALKER, J., concurring in the dissenting opinion.

APPEAL by plaintiff from *Connor, J.,* at October Term, 1915, of GREENE.

Civil action to recover for breach of contract to convey to plaintiff certain real estate, pursuant to a definite written contract to that effect signed by plaintiff and by defendants, W. H. Dail and his wife, M. V. Dail.

Defendants, admitting that *feme* defendant signed the contract, alleged and offered evidence tending to show that the privy examination of defendant, touching her execution of the contract, had not been taken. Second, that *feme* defendant had only a life estate in said land, she having conveyed same to her children, reserving a life estate therein, and this deed had been duly registered in said county for some time before the present contract was executed. Defendant offered evidence, further, to show that plaintiff, at the time of the contract, had actual notice of the deed executed by plaintiff to her children. This last position was controverted by plaintiff, who offered testimony in support of his position.

It was also alleged in the complaint and not denied in the answer that, at the time of the execution of the contract, *feme* defendant was a free trader. On issues submitted the jury rendered the following verdict:

1. Did defendants contract to convey the lands described in the complaint to the plaintiff, as alleged in the complaint? Answer: Yes.

2. If so, did the defendants fail and refuse to convey the said land pursuant to said contract, as alleged in the complaint? Answer: Yes.

3. If so, what sum, if any, is plaintiff entitled to recover of the defendants as damages for said breach of said contract? Answer: $1,415, with interest from 1 January, 1913.

4. If so, what sum is plaintiff entitled to recover of the defendants as damages for injury to his business as a dealer in real estate? Answer: Nothing.

5. Did plaintiff, at time he entered into said contract with defendants, have constructive notice from the records of Greene County that defendants could not convey said land by good and indefeasible deed for the reason that they owned only a life estate in said land with remainder to their children? Answer: Yes.

6. Did plaintiff, at time he entered into said contract with defendants, have actual notice that defendants could not convey said land by good and indefeasible deed for the reason that they owned only a life estate in said land with remainder to their children? Answer: No.

Judgment on the verdict, and plaintiff excepted and appealed.

*L. I. Moore, J. A. Albritton and J. P. Frizzelle for plaintiff.*
*F. M. Wooten for defendant.*

HOKE, J. Our Constitution, Article X, sec. 6, contains provision as follows: "The real and personal property of any female in this State acquired before marriage, and all property, real and personal, to which she may, after marriage, become in any manner entitled, shall be and remain the sole and separate estate and property of such female, and shall not be liable for any debts, obligations or engagements of her husband, and may be devised and bequeathed, and, with the written assent of her husband, conveyed by her as if she were unmarried."

Soon after its adoption, the Legislature enacted statutes defining the status of married women in reference to property and their capacity to contract, the more important now appearing in Revisal, sec. 952, which requires that, in order to a valid conveyance, power of attorney or other instrument to affect her realty, this last to include contracts to convey deeds of trust, mortgages or other instruments, the same shall be executed by the husband and the wife and the privy examination of the wife shall be had; sec. 2107, regulating contracts between the husband and the wife and providing that, as to such contracts, in addition to the privy examination, that the officer taking such examination should certify that the contract was not unreasonable or injurious to the wife; sec. 2094, providing: "No woman during her coverture shall be capable of making any contract to affect her real or personal estate, except for her necessary or personal expenses, or for the support of the family, or such as may be necessary in order to pay her debts existing before her marriage, without the written consent of her husband, unless she be a free

trader, as hereinafter allowed"; sec. 2112, directing how a woman may become a free trader; and sec. 2113, providing that, when she has lawfully become such, she may "contract and deal as if she were a *feme sole.*"

In construing this section of our Constitution and statutes passed on the subject, it has been held that neither the constitutional provision nor the statutes referred to had the effect of enabling a married woman living with her husband to bind herself by contracts strictly *in personam*, but that the constitutional provision declaring her property, real and personal, to be her sole and separate estate was intended and operated to enable her to *charge* her personal estate by contracts on the principle by which, under recognized equitable principles, she was formerly allowed to charge her separate estate in the hands of a trustee and her real estate also by contract in which her husband joined and the wife's privy examination taken. *Ball v. Paquin,* 140 N. C., 83; *Farthing v. Shields,* 106 N. C., 289; *Flaum v. Wallace,* 103 N. C., 296; *Pippen v. Wesson,* 74 N. C., 437. It was further held that the requirement as to certain classes of contracts that the husband should join in them and the privy examination of the wife taken was not in conflict with the constitutional provision that the wife's property could be conveyed with the written assent of the husband, but should be considered as establishing a form by which the husband's assent to the contract should be properly evidenced. *Southerland v. Hunter,* 93 N. C., 310; *Ferguson v. Kinsland,* 93 N. C., 337.

A comprehensive and searching analysis of the constitutional and statutory provisions, and the decisions construing the same, prior to *Ball v. Paquin,* prepared by Prof. Samuel F. Mordecai, dean of the Law Department of Trinity College, N. C., appears by permission and courtesy of Mr. Mordecai in Judge Pell's Revisal as a separate and additional annotation to sec. 2094, and may be consulted to advantage by persons desiring to inform themselves on this interesting subject.

Later, in *Council v. Pridgen,* 153 N. C., 443, it was held that the "power to contract and deal as if she were a *feme sole,"* conferred upon a free trader by sec. 2113 of the Revisal, referred to the ordinary contracts made in some business in which a married woman might engage, and that it did not enable her to convey her real estate or make contracts to do so, etc., without privy examination, contrary to the express provisions of section 952. This being the law as it existed formerly, the Legislature of 1911, ch. 109, enacted the statute known as the Martin act, in terms as follows: "That sec. 2094 of the Revisal of 1905 be and the same is hereby repealed, and the following substituted therefor: 'That, subject to the provisions of section 2107 of the Revisal of 1905, every married woman shall be authorized to contract and deal so as to

affect her real and personal property in the same manner and with the same effect as if she were unmarried, but no conveyance of her real estate shall be valid unless made with the written assent of her husband, as provided by sec. 6 of Art. X of the Constitution, and her privy examination as to the execution of the same taken and certified, as now required by law.' "

This statute was construed in *Lipinsky v. Revell,* 167 N. C., 508, upholding the liability of a married woman on a contract of purchase of goods, etc., and in *Royal v. Southerland,* 168 N. C., 405, on an ordinary contract of suretyship, and, from the very definite and specific language of the statute and its evident purpose in reference to the law as it formerly existed, we think it should be held to mean what it plainly says, that, except as to contracts with her husband, in which the forms required by sec. 2107 must still be observed, and except in *conveyances* of her real estate, in which case her privy examination must still be taken and her husband's written consent had, a married woman can now make any and "all contracts so far as to affect her *real* and *personal* property, in the same manner and to the same effect as if she were unmarried." And, this being true, we concur in the ruling of the court below that, on breach of her contract to convey her land, she may be held responsible in damages, as in other contracts by which she is properly bound. It is urged that the act, by correct construction, should be held to except "contracts to convey" as well as "conveyances," on the principle that equity not infrequently regards the holder of such an interest as the real owner. But, while this is a recognized principle, applicable in many instances when dealing with the interest under such a contract, equity, regarding that as done which a man is under a binding obligation to do, the position may not, in our opinion, be extended to enlarge and change the definite language of an act restricting an exception to "conveyances," and that, too, in modifying a law in which conveyances, powers of attorney and contracts to convey, etc., are expressly mentioned. In such case, if the Legislature had desired or intended to except executory contracts to convey, it would have added this to the word "conveyances," the only form of contract which the statute specifies as excepted.

Again, it is insisted that it is an unreasonable interpretation which holds a married woman liable to damages for breaking a contract when the statute itself provides that the contract may not be specifically enforced; but, to our minds, there is nothing unreasonable in this. The statute, which enables a married woman to bind herself by any contract to affect either her real or her personal estate, except that, in conveyances of the latter, the written assent of her husband and her privy examination are required, simply means that when she makes an executory con-

tract of this character and her privy examination is not taken she can only be held in damages, and that specific performance may not, as formerly, be enforced. The remedy by the award of damages is the ordinary means of adjustment for breaches of contract. That by specific performance is properly regarded as additional and supplementary to the other. Pomeroy Contracts (2 Ed.), p. 11; Anson Contracts, pp. 384 and 385.

The requirement of privy examination in conveyances and contracts to convey realty having been established by the Legislature, it can modify the requirement or withdraw it altogether, and there is nothing unreasonable and, assuredly, nothing beyond its power in the enactment of a statute which says that in all contracts by married women to convey land, when same are wrongfully broken by them, they may be held responsible in damages, but they cannot be compelled to convey unless they have been privily examined according to forms of law.

Again, it is contended that it would be altogether unjust to mulct a married woman in damages when she might be perfectly willing to carry out her contract by a conveyance, and is prevented from doing so because her husband refuses to give his consent; but it is on more a hardship than any other case where one has, in good faith, contracted to convey land and afterwards finds out that he is unable to make title. The obligations of a contract, except in certain specified and very restricted instances, are imperative, and, when they are wrongfully broken, neither inability to perform nor ignorance of conditions may ordinarily avail as protection against an award of damages. *Steamboat Co. v. Transportation Co.,* 166 N. C., 583.

It is further urged that plaintiff should not be allowed to recover damages because of the fact that there was on the record a deed in which *feme* defendant had conveyed the property to her children, reserving only a life estate; that plaintiff is affected with constructive notice of the terms of such a deed, and is therefore barred of any recovery; defendant citing *Joyner v. Crisp,* 158 N. C., 199, in support of her position.

In *Joyner v. Crisp* it was held that the obligations of the contract, the subject-matter of litigation, were to be performed as an entirety, and the parties were relieved of same, and of all liability thereunder because it appeared on the face of the contract itself that, in substantial and material features, there was an inability to perform. The portions of the opinion as to the effect of notice must be understood in reference to the conditions there presented, and are not applicable to the facts of this record.

Under the old system of administering justice, when legal and equitable rights were to be sought in the two forums of law and equity the

remedy by specific performance was enforced on the equity side of the docket, and while damages were sometimes awarded when specific performance could not be obtained, this rule was ordinarily refused if it was made to appear that the plaintiff was aware that specific performance could not be obtained when the suit was first instituted, or before that time. It was regarded, to some extent, as a fraud on the jurisdiction to bring the suit in equity under such circumstances. But it was never understood that a claim for damages could not be recovered if the suit therefor had been brought in the proper forum, i. e., on the law side of the docket, and since legal and equitable rights are now sought and obtained in one and the same court, there is usually no reason why, in case of wrongful breach of contract, damages should not always be allowed when, for any good reason, specific performance cannot be obtained.

Speaking to this question in Pomeroy on Contracts, sec. 480, the author says: "One further question remains to be considered: whether the reformed procedure, adopted in so large a portion of the States, has abrogated or modified any of the foregoing rules concerning the recovery of damages in the action for a specific performance. While that procedure does not purport to make any changes in legal and equitable rights, duties, and remedies or reliefs, it does abolish all distinctions between legal and equitable actions and provides one civil action for the trial of all controversies in which legal and equitable causes of action and defenses may be united, and legal and equitable remedies may be granted by a single judgment. In other words, this procedure expressly and intentionally removes at one blow all the ground and reasons upon which, under the ancient system, the rule was based which forbids the award of damages in equity suits. Independently of any authority, it would seem to be perfectly clear that the general rules which had been established as a part of the former procedure had been materially modified by this sweeping reform. The question thus suggested has been directly answered by the New York Court of Appeals. An action was brought by a vendee praying the specific enforcement of a contract. Through a failure of the defendant's title a specific performance was impossible, and this inability was known to the plaintiff before the commencement of his suit. The complaint alleged all the facts necessary to show a cause of action for damages, as well as for a specific enforcement, but only demanded the latter relief. The Court refused the specific performance, but held the plaintiff entitled to recover damages for the defendant's breach of the contract. Admitting the rule to have been settled, under the former procedure, that where a plaintiff was aware of the inability at the time of commencing his suit equity would not retain the case and give damages, the Court declared that this rule had been abrogated by the Code, and it laid down the general doctrine

as follows: If a complaint states facts constituting a cause of action for specific performance, and also one for damages for a breach of contract, a failure of the first will not prevent his recovery on the second, whatever may have been the prayer for relief, citing *Sternburger v. McGowan,* 12-20 and 21. And, assuredly, in the absence of any facts tending to show fraud or imposition, avoiding the contract or creating an estoppel, damages for wrongful breach of contract to convey are not now denied merely because the party seeking relief was aware, at the time of the contract, or before suit, that the other had no title. It is well understood that many contracts of this kind are entered into under just these circumstances, the parties believing they could obtain the title, and being allowed till the time of trial to procure and tender it. *May v. Getty,* 140 N. C., 311.

There is no error in this record and the judgment in plaintiff's favor is affirmed.

No error.

CLARK, C. J., concurring: There is nothing in the Constitution of North Carolina which disabled the Legislature from providing that a married woman can "contract as if single." If she can contract, then she is liable for breach of her contract. The contract in this case was for land, and if for any reason, as the refusal of a husband to give his written consent or for lack of title, or for any other cause, the court can not decree specific performance, then an action for damages lies as in all such cases. Indeed, where there is a breach of contract to convey lands the party aggrieved is never compelled to bring specific performance, which is a proceeding in equity, but he has his option to bring an action for damages for the breach, as the plaintiff has done in this case.

Chapter 109, Laws 1911, is as broad as it is possible to make it (except as to contracts between man and wife) in providing that "Every married woman shall be authorized to contract and deal so as to affect her real and personal property in the same manner and with the same effect as if she were unmarried." The act then proceeds to say that, as to "conveyances of her real estate," there must be the written assent of her husband as required by the Constitution. This statute of 1911 is the expression of the constitutional body authorized to make the laws, and it is immaterial what was the law formerly in that respect. We know that it has been held differently by the Court, or the statute would not have been necessary.

It is true that in this case liability is enforcible against the married woman. But responsibility is the correlative of freedom and of liberty. Only those are irresponsible who are incompetent for lack of maturity—

as minors or "in chains," as convicts, idiots, and lunatics. Our Constitution and legislatures, responding to the growing enlightenment and the advancing sense of justice of the age, are taking women out of that class. Whenever the Legislature conceded the right to contract there went with it the liability upon the contracting party to become liable for breach of contract.

Down to the Constitution of 1868 the badges of inferiority imposed upon married women by the barbarism of the Middle Ages, which made them practically the chattels of their husbands, existed in the laws of North Carolina. Till then married women were *non sui juris* in this State. The Constitution made them fully and in every respect *sui juris,* save only in the restraint upon alienation imposed by requiring them to obtain the written consent of their husbands to conveyances of their realty. This was the sole restriction upon the control of her property by a married woman recognized by the Constitution, and that has been long abolished in England and in nearly all the States of this Union. The requirement in our Constitution of a privy examination is limited to conveyances by the husband of his allotted homestead.

Down to 1868 in this State, on marriage all of the wife's property went into the possession or ownership of the husband. We went even beyond the common law in depriving a wife of her inchoate right of dower until the act of 1867, which "restored the common-law right of dower." Notwithstanding the great change so clearly made in the Constitution as to the property rights of married women, the judges then on the bench, educated under the former system, were not able to fully recognize it, and made many decisions more in accordance with former ideas than with the spirit and letter of the Constitution.

If the plain letter of the Martin act did not fully express its intention to confer untrammeled right of contract upon married women, it should be construed in the light of the numerous statutes, all in the same direction, changing the decisions of the courts which did not accord with the Constitution. Among them may be named Rev., 2095, which provides that a married woman can draw out her money in bank by her own check and that her husband's check will not be valid for that purpose, as formerly; that she can be a free trader, Rev., 2112-2118; that she can hold building and loan stock, Rev., 3885; that when a building is built or repaired on her land with her consent or procurement she shall be deemed to have contracted for the same, Rev., 2016; that she may sue without joining her husband when the action concerns her separate property, Rev., 408; that an execution can issue against her property; that the statute of limitations runs against her as against any other person *sui juris;* that the savings from her separate estate are her separate property, Rev., 2100; that if the husband abandons her she

WARREN *v.* DAIL.

can sell and convey her real property as if unmarried, Rev., 2117; that her earnings shall be her own and not subject to control of her husband, and that compensation for any tort to her person or her property and damages for physical and mental anguish suffered by her, she alone can recover, and without joining her husband, Laws 1913, ch. 13; that if she owns land for life or a longer period she shall be a freeholder, Laws 1915, ch. 22; and many other statutes changing decisions of the courts that had followed the ancient ideas as to the incapacity and incompetence of married women. In short, the act of 1911, known as the "Martin act," simply sums up a long line of statutes and culminates by recognizing in married women the right to make any and all contracts as fully as if they had remained single, or that their husbands could make, save only contracts between husband and wife under Rev., 2107, as to which the presumption in law remains that the husband will take advantage of the wife and that the wife is incompetent to prevent it, and that the preventive is the wisdom of some adjacent magistrate who shall supervise such contracts. With that exception there is no restraint upon the contracting powers of married women.

As to wills, married women are equally untrammeled. As to conveyances there is the constitutional restraint upon alienation, that the wife must have the written consent of the husband to conveyances of her realty. There is no corresponding restraint upon the husband, who can make a valid conveyance without his wife's consent, subject only to the contingency of dower if she outlives him. There is a further restriction in the privy examination of the wife, which is still required in North Carolina, though it exists only in four other States of the American Union, and has long since been abolished in England. Whether this requirement is a greater reflection on the honesty of the husband or on the competency of the wife is an open question.

Taking, therefore, the language of the Constitution and the entire drift of legislation since, it is very certain that the intent of the Martin act to confer upon married women entire freedom of contract, in every respect, except with her husband, whether it affects their real or personal property, is beyond question.

BROWN, J., dissenting: It must be admitted that the contract, for a breach of which the plaintiff seeks damage, acts directly upon the *feme* defendant's land, and not incidentally. By it she contracts to convey to plaintiff certain lands owned by her, and it could be specifically enforced had her privy examination been taken. If any legal question has ever been settled by repeated decisions of this Court it is that the deed or contract of a married woman charging her real estate in this State is a nullity unless her husband joins and her privy examination is taken. *Scott v. Battle*, 85 N. C., 184; *Farthing v. Shields*, 106 N. C.,

289; *Ball v. Paquin,* 140 N. C., 83; *Bank v. Benbow,* 150 N. C., 781; *Council v. Pridgen,* 153 N. C., 443.

The assent of the husband is a constitutional requirement. The necessity for the privy examination is not only required by Rev., 952, as to all her lands, and by the Constitution as to the homestead, but it is made a necessary requisite by the so-called Martin act, itself. So carefully has this Court guarded this protection to married women that in *Smith v. Bruton,* 137 N. C., 79, it is held that a married woman cannot bind herself by agreeing to arbitrate the question of title to land owned by her. It might result in conveying away her land by an award of arbitrators without the necessary assent of her husband and privy examination.

I am unable to comprehend how this married woman can be mulcted in damages for a breach of a contract which has been repeatedly held to be an absolute nullity, as much so as if it had never been reduced to writing. How can she be civilly liable on a contract which in law has never had any existence?

In *S. v. Robinson,* 143 N. C., 622, *Mr. Justice Walker* says: "The defendant cannot be criminally liable under Rev., sec. 3367, unless the contract with the prosecutor by which she rented and agreed to cultivate the land was valid and binding upon her. This was decided in *S. v. Howard,* 88 N. C., 650, as to an infant, whose contracts are merely voidable, and the principle is applicable with greater force to a married woman, whose contracts, as a general rule, are void." In *Howard's case,* *Justice Ashe,* for the Court, says: "The case then results in this, that the State seeks by this indictment to hold the defendant amenable to the criminal law for the violation of a void contract. With all due respect to the opinion of those who entertain such a proposition, we must say that it seems to us preposterous." See, also, Bishop on Statutory Crimes, sec. 131; *S. v. Plaisted,* 43 N. H., 413; *Jones v. State,* 31 Texas C. R. Appeals, 252; 2d McLean's C. R. Law, sec. 846.

I say, with all deference, that it is, to my mind, a solecism to hold that an action for damages may be maintained for a breach of a contract that is so utterly null and void that a court cannot compel the defendant to specifically perform it. It is suggested that if a married woman borrow money and give her individual note for it, judgment may be obtained against her if she fails to pay it, and her lands sold under execution, and thus she will use them, without her husband's consent, and without her privy examination.

That is now undoubtedly true, because the execution of the note constitutes a valid contract, and privy examination and consent of husband are not prerequisite to its validity. Consequently, its performance may be enforced by legal process. But in this case the attempt is being made to give force and vitality to a contract that has never had legal existence.

How can the Court give any judgment against this defendant for breach of a contract which she has never executed according to the law of the land?

MR. JUSTICE WALKER concurs in this opinion.