### JOHNNIE P. L. E. SILLS v. FRANK BETHEA

(Filed 22 October, 1919.)

1. **Constitutional Law—Husband and Wife—Written Consent—Deeds and Conveyances—Contracts.**

    The written consent of the husband is necessary to a valid conveyance by the wife of her lands. Const., Art. X, sec. 6.

2. **Same—Death of Husband—Mortgages—Sale—Election.**

    Without the written consent of her husband, the wife attempted to convey her lands, took a mortgage back to secure the balance of the purchase price, and, after the death of her husband, advertised the land under the power of sale in the mortgage, but withdrew it after tender of principal, interest and costs by the mortgagor and brought action of ejectment, in which the defendant asked for specific performance: *Held*, having by the foreclosure proceedings elected, after the death of her husband, to receive the money for her land, she will not be permitted to claim it on the ground that her deed, without the written consent of her husband, was invalid to pass the title.

    BROWN, J., concurring; WALKER, J., dissenting; HOKE, J., concurring in the dissenting opinion.

APPEAL by defendant from *Guion, J.*, at May Term, 1919, of SAMPSON.

Ejectment. The judge finds from the pleadings and admission of the parties that the plaintiff while married executed the deed for the land to the defendant, who at the same time executed notes for the purchase money secured by mortgage on the same land. After the plaintiff became discovert by the death of her husband she advertised the land for sale under the mortgage, but subsequently, when the defendant tendered her the full amount of the notes and interest, she called the sale off and brought this action for ejectment. The court rendered judgment for specific performance. Appeal by Plaintiff.

*Kerr & Herring for plaintiff.*
*Butler & Herring, Fowler & Crumpler, and E. C. West for defendant.*

CLARK, C. J. The plaintiff has gone into court asking recovery of the land, and the defendant asks a decree of specific performance.

The facts are found by the judge upon the pleadings and admissions of the parties. The privy examination of the plaintiff was duly taken, but his Honor correctly held that the deed was not sufficient as a conveyance because it lacked the "written assent of the husband." Cons., Art. X, sec. 6.

Irrespective of that defect, it was not a conveyance of any title, because at the instant of making the deed the defendant conveyed back

the property by a mortgage to secure the purchase money. It was therefore, in legal effect, in no sense a "conveyance," but merely a contract to convey upon payment of the purchase money, notwithstanding that in form there was a deed from the plaintiff to the defendant and a mortgage deed back. This was held in *Bunting v. Jones,* 78 N. C., 242, and numerous citations thereto in Anno. Ed., holding that in such case "no title vested in the defendant whose wife acquired no dower or homestead rights therein." It is therefore simply a "contract" that upon payment of the purchase money the plaintiff would convey the property. It has no other legal effect.

The Martin Act, ch. 109, Laws 1911, repealed Rev., 2094, and substituted therefor the following: "Every married woman shall be authorized to contract and deal so as to affect her *real* and personal property *in the same manner and with the same effect* as *if she were unmarried,"* with the exception only of contracts with her husband under Rev., 2107; and as to *"conveyances* of her real estate" still requiring the written assent of the husband and privy examination. The *sole* exception as to *contracts* was as to contracts with her husband under Rev., 2107. *Thrash v. Ould,* 172 N. C., 730; *Grocery Co. v. Bails,* 177 N. C., 299, and cases there cited.

Further, after the death of her husband, the plaintiff recognizing fully the *obligation* of the contract endeavored to enforce it against the defendant, and advertised the property for sale under the mortgage. But when the defendant tendered her the full amount of the note and interest thereon, together with the costs of sale under the mortgage, and demanded execution of the deed for the property under the terms of the contract she refused to comply and brought this action to recover the land, and the defendant asks a decree of specific performance.

*Judge Guion,* after reciting in the judgment the facts above set out, as to which there was no controversy, recites, "The court being further of the opinion, while the deed set forth in the answer was invalid and ineffectual to convey said land by reason of the want of the written assent of the husband thereto, yet being of the opinion that said · deed so executed was a good and sufficient contract to convey said land under the provision of Laws 1911, ch. 109," adjudges that there was a "good and sufficient contract to convey said land, and that upon payment to the plaintiff of the full sum evidenced by the notes described in the answer, with the interest thereon until paid, said plaintiff should execute to the defendant a deed for the land described in the complaint, and that the defendant recover of the plaintiff the costs of the action."

This is in exact accordance with the terms of the contract which the plaintiff under the Martin Act had the right to make *"in the same manner and with the same effect* as *if she were unmarried."* There is exactly the same enforcement of the contract against the plaintiff which

she sought to have against the defendant after she again became a
single woman by advertising the property for sale under the contract.

The just and accomplished judge applied to both parties the thrice
repeated scriptual injunction, "With what measure ye mete, it shall be
measured to you again." (Matthew 7:2, which was repeated in Mark
4:24 and Luke 7:38.)   Equity and justice know no higher standard
than this.   The plaintiff, her husband being dead, attempted to enforce
the contract and cannot now complain that the Court has made her
comply therewith.

While the husband lived the obligation of the contract could be en-
forced only by an action for damages (*Warren v. Dail,* 170 N. C., 406),
for the reason that the court could not require specific performance
because it could not compel the husband to give his written assent
(*Fortune v. Watkins,* 94 N. C., 315, which was the case where the wife
refused to join in the husband's deed), but the husband being dead
there is no obstacle now in requiring the plaintiff to comply with her
contract by specific performance.

Affirmed.

BROWN, J., concurring:   After the death of her husband, when she
became discovert, in my opinion, the plaintiff had the right to repudiate
the transaction and sue for the land, or else to affirm the sale and
collect the purchase money represented by the purchase money notes
and mortgage.   It is manifest that she elected to collect the purchase
money and thereby affirmed the sale.   When she advertised the land
under the power of sale contained in the mortgage she thereby demanded
the purchase money of the defendant and indicated her election to take
the purchase money and not the land.   This was as clear an indication
of her purpose as if she had brought her suit to foreclose the mortgage
and bar the defendant of his equity of redemption.   It was a clear,
unmistakable and unequivocal election on her part, and when the
defendant tendered her the full amount of the purchase money ·after
the land had been advertised for sale, it was her duty to accept it.   As
the plaintiff could not have the land and the purchase money both it
was her duty, after the death of her husband, if she intended to claim the
land, to cancel the purchase money notes and mortgage and return them
to the defendant and make demand upon him for the land, which she
failed to do.

For these reasons, I concur in the judgment of the Court.

WALKER, J., dissenting:   I dissent in this case upon the ground so
strongly and clearly stated in the dissenting opinion of *Justice Brown,*
in *Warren v. Dail,* 170 N. C., 406, at p. 415, in which I concurred.   He

there says: "If any legal question has ever been settled by repeated decisions of this Court it is that the deed or contract of a married woman charging her real estate in this State is a nullity unless her husband joins and her privy examination is taken. *Scott v. Battle,* 85 N. C., 184; *Farthing v. Shields,* 106 N. C., 289; *Ball v. Paquin,* 140 N. C., 83; *Clayton v. Rose,* 87 N. C., 106; *Bank v. Benbow,* 150 N. C., 781; *Council v. Pridgen,* 153 N. C., 443. The assent of the husband is a constitutional requirement. The necessity for the privy examination is not only required by Rev., 952, as to all her lands, and by the Constitution as to the homestead, but it is made a necessary requisite by the so-called Martin Act itself. So carefully has this Court guarded this protection to married women that in *Smith v. Bruton,* 137 N. C., 79, it is held that a married woman cannot bind herself by agreeing to arbitrate the question of title to land owned by her. It might result in conveying away her land by an award of arbitrators without the necessary assent of her husband and privy examination. . . . In this case the attempt is being made to give force and vitality to a contract that has never had legal existence."

In this case there was no assent of her husband to the deed she is alleged to have made, and no valid privy examination. It was, therefore, void—an absolute nullity and incapable of ratification by anything she has since done and relied on as such. She has done nothing to prejudice any one's rights. The mere advertisement under the power contained in the mortgage is not sufficient to estop her or to bind her by ratification, admitting that the void deed is susceptible of ratification by an act of hers sufficient for that purpose. How was anybody hurt by her advertisement? She withdrew it and stood upon her rights under the law before there was even any equitable estoppel by completing the sale, making a deed and receiving the purchase money. There is no contention that any other kind of estoppel prevents her from claiming her land.

In *Bank v. Bridgers,* 98 N. C., 67, Mrs. Bridgers, whose original note was held to be void because given during her coverture, gave a new note after she become discovert, which was founded upon a fresh consideration. She was held to be bound by the second note because it was a new transaction, based upon a sufficient legal consideration.

The Martin Act, when properly considered, in my judgment, is not applicable to the facts of this case. It is conceded that the deed of this lady, who was a married woman when it was executed, is void, not having the assent of her husband, and her valid privy examination not having been taken, and yet it is proposed to hold her bound by it as a contract and to compel her to do by our decree what the law plainly and positively forbids. This is not an action for damages, but we are now deal-

ing directly with her land, with a view of taking it from her, whether by deed or decree, without the formalities and ceremonies, which the law expressly and imperatively requires to be observed. What is forbidden to be done directly cannot be done indirectly. The anomaly thus presented was surely not contemplated by the act of 1911, and was not in the mind of its able and learned author when he formulated it. Her deed is absolutely void, and is a nullity. *Ex nihilo nihil fit.*

It is suggested that this instrument, in form and substance a deed, may operate as a contract to sell; but if this be so, and I must deny its correctness, it makes no difference in the result, because by the statute, Revisal, secs. 952 and 953, a contract to sell the wife's land without the written assent of the husband is just as void as if it is treated only as a deed. · The husband and wife cannot *execute* the deed or contract by separate instruments. They must execute it jointly, and then the probate, as to both, can be taken by different officers at different times and places. But here there was no good execution, and whether treated as a deed or a contract the instrument was an absolute nullity, or, as the Court says in *Scott v. Battle, supra,* it is so utterly void that it has no more force or effect than a "blank piece of paper." I am unable to see how a paper absolutely void can be vitalized by the husband's death, without anything being thereafter done by the wife, which, in law, imparts life to it. The mere fact of the husband's death does not by any principle of law known to our jurisprudence, produce any such effect. The "Martin Act" is far from warranting the assumption that the deed of a married woman can thus be made to operate as her contract. And a majority of the Court, as I understand it, take this view, the disagreement between them being only as to whether there was a ratification.

But it is now strenuously urged that she is bound by her void deed, even as a deed, and not merely as an executory contract, because she has ratified it after her discoverture. How and why? Judge Guion took no such position when he entered judgment upon the agreed facts. He held her bound by it, not as a deed, but as a contract to convey, which fell within the operation of the Laws of 1911, ch. 109; but that view does not meet with the concurrence of a majority of this Court, and the judgment cannot be affirmed unless the *feme* is equitably estopped, by her acts or conduct, to allege the invalidity of her deed, or, for the same reason, she has ratified the same. A naked ratification or admission of her liability by words will not do, if it is oral, because as all the cases show, it would be void by the statute of frauds, and we would permit her land to pass to another in clear violation of all our statutes (*Price v. Hart,* 29 Mo., 171); and besides, it would contain no element of an equitable estoppel. *Brown v. Bennett,* Pa. St., 420.

SILLS *v.* BETHEA

I have examined the authorities upon this subject carefully and exhaustively and find that in every case where it was held that a married woman, who had become discovert, was bound, because of ratification, there was some element of fraud or, at least, of an estoppel, which made it inequitable that she should be allowed to disavow, or repudiate, her deed, or there was formal ratification by a binding written instrument.

It is said in *Price v. Hart, supra:* "That deed, not having been acknowledged according to law, had no validity as a deed against Mrs. Collins, and, as a contract, could not bind her as she was at the time of its execution *feme covert.* Although a nullity in the law, it had however a physical existence; and as it contained a distinct account of the sale of the land, a minute description of the land itself and a specification of the terms of sale, it might very well have been adopted, or ratified, by a subsequent agreement, if that subsequent agreement was in the form required by the law. In such case it is obvious that the binding force of the contract is in the subsequent agreement and not in the deed, and the agreement must therefore be in writing. If the deed can be adopted or set up by a mere parol declaration, made by Mrs. Collins after the removal of her disability of coverture, it would seem to let in all the evils which the statute was designed to guard against." In order to bind the *feme* by her deed, which was an absolute nullity when it was executed, as all our cases admit, there must either be a new consideration for her promise to ratify it *(Bank v. Bridgers, supra)*, or she must be prevented from setting up its invalidity by an estoppel *en pais,* but she is not estopped where she has done nothing which has misled another into acting to his prejudice.

. "Estoppel by misrepresentation, or equitable estoppel (which is estoppel *in pais*), grows out of such conduct of a party as absolutely precludes him, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either by contract or of remedy. This estoppel arises when any one, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. It consists in holding for truth a representation acted upon, when the person who made it, or his privies, seeks to deny its truth and to deprive the party who has acted upon it of the benefit obtained." 16 Cyc., 722; *Boddie v. Bond.* 154 N. C., 359 (*S. c.,* 158 N. C., 204); *Patillo v. Lytle,* 158 N. C., 95.

"The representation· must have been acted upon to the damage .of the party acting. It is not enough that the representation ha's been barely acted upon, for if no substantial prejudice would result by admitting the party who made it to contradict it, he will not be estopped." Bigelow on Estoppel, 23.

"The law does not favor estoppels, and as to estoppels by matter *in pais,* it may be said that unless a person has induced another by representations or declarations to alter his position injuriously to himself, he will not be estopped. The fundamental principle on which the doctrine of estoppel rests is an equitable one—a principle which is intended to suppress fraud and to compel just and fair dealings with all. On no principle of fair dealing and equity can it be held that one should be estopped to protect his rights in a matter because of his conduct in reference thereto and upon which another has acted, but without prejudice to his rights and interests. It cannot be said, with consistency, that a man has taken advantage of his own wrong where his statements have not damaged or injured another." *Rainey v. Hines,* 120 N. C., 376; *Lovelace v. Carpenter,* 115 N. C., 424; Eaton's Equity, p. 169.

There has been no formal ratification in writing. What, then, has been done to validate her deed? The act of advertising did not, as it prejudiced no one, having been withdrawn before any sale. I have not been able to recall any legal principle that holds her bound by these acts, as a ratification, or an estoppel, and she has not ratified otherwise. The tender of the money surely could not have that effect, because that was not her act, but the gratuitous act of the defendant, and she declined to accept the tender and receive the money, which was a distinct repudiation of her void deed, instead of being a ratification of it.

The Court may require her to surrender the note and mortgage, as was suggested in *Scott v. Battle, supra,* at p. 192, if she has them in her possession, or under her control, but there is no reason either in law, or in equity, why it should go beyond this requirement, which will place all parties *in statu quo* and no prejudice will be done any .one.

It is manifest that the plaintiff withdrew the property from sale, because, at the time she advertised the same she was not aware of her rights, but supposed that her deed was valid, and as soon as she discovered her mistake she promptly asserted her right by refusing to· accept the money tendered and discontinued the prosecution of the sale. This was a repudiation of the deed, rather than a ratification of it, and she has misled or deceived no one, and certainly no prejudice has resulted, and none will follow if the papers are surrendered. The Court, in its judgment, can make this a condition precedent to a recovery or a writ of possession.

It must be remembered that the opinion in *Warren v. Dail, supra,* was confined strictly to the question whether action for damages would lie on a broken contract to convey land made by a married woman, and it was recognized by the learned justice, who spoke for the Court, that the doctrine there considered would not apply to her deed, or so as to compel her to execute a deed for the land, under her contract to do so.

JUSTICE HOKE concurs in this dissenting opinion.